No. 2--05--0398

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| ROBERT W. GAYLOR, JOANNA A. GAYLOR, ROBERT E. GAYLOR, MORNA K. GAYLOR, GREG K. GREENHILL, BETHANN GREENHILL, | ) ) ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiffs and Counterdefendants-Appellees, | ) ) ) ) | |
| v. | ) ) | No. 03--MC--1 |
| THE VILLAGE OF RINGWOOD, | ) ) ) | Honorable |
| Defendant and Counterplaintiff-Appellant | ) ) ) | Michael J. Sullivan, Judge Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, the Village of Ringwood, appeals the order of the circuit court of McHenry County, granting summary judgment in favor of plaintiffs, Robert W. Gaylor, Joanna A. Gaylor, Robert E. Gaylor, Morna K. Gaylor, Greg K. Greenhill, and Bethann Greenhill, on their petition for disconnection and denying defendant's cross-motion for summary judgment on its counterclaim to the petition for disconnection. Defendant argues that the trial court erred by failing to enforce the annexation agreement entered into by defendant and the Gaylor plaintiffs and, instead, allowing plaintiffs to disconnect their property from defendant. We reverse and remand with directions.

The following facts were established in the trial court. On December 15, 1997, the Gaylor plaintiffs and defendant entered into an annexation agreement that set forth the terms under which the Gaylor plaintiffs' 23.75-acre property would be annexed into the village. Also on December 15, 1997, the subject property was in fact annexed into the village. On December 15, 1997, as well, defendant rezoned the subject property from A-1, agricultural district, to I-1, light industry. In addition to the rezoning, the subject property was granted the right to use the B-3, general business district uses, certain specified conditional uses, and frontage variations for the various subdivision lots contemplated to be created.

On February 2, 2000, and pursuant to the terms of the annexation agreement, defendant approved the final plat of subdivision of the subject property. The final plat of subdivision was recorded, and the subject property is now commonly known as the Gaylor Business Park.

The terms of the annexation agreement provided that, after 50% of the lots in the subdivision had been sold, defendant would become responsible for the maintenance of the streets and the street lighting. At times relevant to this appeal, the 50% of the lots in the subdivision required to trigger defendant's obligations under the annexation agreement had not been sold. The annexation agreement also provided:

"24) The covenants and agreements contained in this Agreement shall be deemed to be covenants running with the land during the term of this Agreement and shall inure to the benefit of all and be binding upon the heirs, executors, successors and assigns of the parties, including the Village, it [sic] Corporate

Authorities and its successors in office and enforceable by order of Court pursuant

to its provisions and applicable statutes of the State of Illinois.

25) This [A]greement shall be binding upon the parties hereto, and their

respective successors and assigns for a full term of twenty (20) years, commencing

as of the date hereof, as provided by Statute and to the extent permitted thereby

and any extended time that may be agreed to by amendments or by changes in the

statutes applicable thereto."

The annexation agreement contained no provisions dealing in any way with the topic of

disconnection. Defendant performed all of its obligations under the annexation agreement;

plaintiffs accepted the benefits of the annexation agreement.

On January 10, 2003, plaintiffs filed a petition for disconnection of the subject

property from defendant's municipal boundaries. Defendant thereafter filed an answer and

counterclaim, seeking to enforce the 20-year term of the annexation agreement.

Eventually, the parties stipulated to the facts, and they now agree that there are no issues

of material fact remaining. As part of the stipulation, the parties recited that plaintiffs'

proposed disconnection satisfied the statutory conditions required for disconnection under

section 7--3--6 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/7--3--6 (West

2004)). The parties filed cross-motions for summary judgment, with plaintiffs seeking an

order disconnecting the subject property from the village and defendant seeking an order

denying the property's disconnection.

The parties framed the issues before the trial court as follows:

"The issues of law before the Court are (A) whether Plaintiff is entitled to

disconnection from [defendant] as a matter of law pursuant to the Illinois Municipal

Code, 65 ILCS 5/7--3--6 [(West 2004)], and upon the filing of a Petition for disconnection upon meeting the stated statutory requirements, where Plaintiffs have entered into an Annexation Agreement, as exists here, with a stated term of twenty (20) years from the date of execution, December 15, 1997, (expiring on December 15, 2017), prior to the expiration of that term, or (B), whether, pursuant to the [sic] its counter claim [sic], [defendant] is entitled to enforcement of the twenty (20) year terms [sic] of the Annexation Agreement as alleged."

The trial court found that plaintiffs had established their right to disconnection under section 7--3--6 of the Municipal Code and, in view of the rule that the disconnection statute was to be interpreted liberally in favor of disconnection, the trial court granted the disconnection, noting that "[t]here is nothing in the facts and circumstances of this case that support[s] [defendant's] positions that the Plaintiffs have waived their right to disconnect from the Village or that the Plaintiffs are estopped from disconnection by benefits they derived from the annexation." Defendant timely appeals. Also, pursuant to Supreme Court Rule 345 (155 Ill. 2d R. 345), we allowed the Illinois Municipal League to file a brief amicus curiae.

On appeal, defendant contends that the trial court erred in denying its affirmative defense/counterclaim that the annexation agreement should be enforced and should preclude plaintiffs' ability to disconnect the subject property from the village. Before exploring defendant's contentions, we first consider the standard under which we review this case.

This case comes to us after the trial court has resolved the parties' cross-motions for summary judgment. A motion for summary judgment is properly granted when the

pleadings, depositions, admissions, and affidavits establish that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Subway Restaurants of Bloomington-Normal, Inc. v. Topinka, 322 Ill. App. 3d 376, 381 (2001). When the parties file cross-motions for summary judgment, they agree that no material factual issue exists and that only questions of law are presented. Subway Restaurants, 322 Ill. App. 3d at 381. Of course, the mere fact that the parties have presented cross-motions for summary judgment does not establish that no factual issues exist; rather, the trial court and the reviewing court may determine the existence of a factual issue sufficient to preclude the entry of summary judgment notwithstanding the fact that the parties do not believe one exists. Kalis v. Colgate-Palmolive Co., 357 Ill. App. 3d 172, 174 (2005). We review de novo the trial court's determination on a motion, or on cross-motions, for summary judgment.

Turning to defendant's contentions, it is helpful first to review the pertinent statutory language. Section 7--3--6 of the Municipal Code provides:

"The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality may have such territory disconnected which (1) contains 20 or more acres; (2) is located on the border of the municipality; (3) if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality, (4) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted, (5) if disconnected, no substantial disruption will result to existing municipal service facilities, such as, but not limited to, sewer systems, street

lighting, water mains, garbage collection and fire protection, (6) if disconnected the municipality will not be unduly harmed through loss of tax revenue in the future. The procedure for disconnection shall be as follows: The owner or owners of record of any such area of land shall file a petition in the circuit court of the county where the land is situated, alleging facts in support of the disconnection. The municipality from which disconnection is sought shall be made a defendant, and it, or any taxpayer residing in that municipality, may appear and defend against the petition. If the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection it shall order the specified land disconnected from the designated municipality. If the circuit court finds that the allegations contained in the petition are not true, the court shall enter an order dismissing the petition." 65 ILCS 5/7--3--6 (West 2004).

The terms of the disconnection provision at issue here provide the key to resolving this case.

Defendant argues that the sentence of section 7--3--6 stating that "[i]f the court finds that the allegations of the petition are true <u>and</u> that the area of land is entitled to disconnection it shall order the specified land disconnected from the designated municipality" ((emphasis added) 65 ILCS 5/7--3--6 (West 2004)), contains two clauses that must be fulfilled in order for a court to grant disconnection. According to defendant, the trial court must find both that the six specifically enumerated statutory requirements for disconnection are fulfilled <u>and</u> that the area to be disconnected is otherwise entitled to the disconnection. Plaintiffs do not respond to this argument.

Nevertheless, we turn to the principles of statutory interpretation to aid us in understanding the meaning of the sentence upon which defendant relies. The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. People v. Jones, 214 Ill. 2d 187, 193 (2005). The best indicator of the legislature's intent is the plain language of the statute. In re Marriage of Rogers, 213 Ill. 2d 129, 136 (2004). The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous. Jones, 214 Ill. 2d at 193. When the statutory language is clear and unambiguous, it must be given effect without resort to other tools of interpretation. Rogers, 213 Ill. 2d at 136.

With these principles in mind, we note that the language of section 7--3--6 is clear and unambiguous. Of particular interest are the last two sentences of section 7--3--6, which provide:

> "If the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection it shall order the specified land disconnected from the designated municipality. If the circuit court finds that the allegations contained in the petition are not true, the court shall enter an order dismissing the petition." 65 ILCS 5/7--3--6 (West 2004).

The first sentence of the above excerpt lists two conditions that must be satisfied before the court shall order disconnection: (1) the allegations of the petition are found to be true; and (2) the land is entitled to disconnection. If any of the allegations are not true, the court shall dismiss the petition. In order that no part of the statute be rendered superfluous or meaningless, we must interpret the statutory language as requiring that, in order to grant a

disconnection petition, the trial court must find both that the six specifically enumerated statutory requirements are fulfilled <u>and</u> that the property is otherwise entitled to disconnection. To construe the provision at issue to require merely that the six specifically enumerated statutory requirements be met in order to grant a petition reads the "area of land is entitled to disconnection" language out of the statute. In order to give this "entitled to disconnection" language effect, section 7--3--6 must contemplate the interposition of an affirmative defense to affect the determination of whether a property is "entitled to disconnection." This is precisely the case before us.

We note that, although plaintiffs do not respond to defendant's argument, the fact that the "entitled to disconnection" language is not employed in the last two sentences of section 7--3--6 might be considered to give rise to ambiguity. We do not believe that ambiguity exists; rather, the meaning is clear and unambiguous, but the statute requires a careful reading to ensure that the whole of the language employed by the legislature is given effect. For completeness, however, we look to whether, because the "entitled to disconnection" language is not employed in the sentences dealing with denying a petition for disconnection, this language cannot be read to allow the interposition of an affirmative defense. This view cannot stand because, as noted above, to read the statute as requiring only that the six enumerated factors be fulfilled in order to secure disconnection would read the "entitled to disconnection" language out of the statute entirely. See <u>Jones</u>, 214 Ill. 2d at 193 (no part of the statute should be construed in such a fashion as to render it surplusage). Nevertheless, we note that, even if this were considered to cause an ambiguity in section 7--3--6, the ambiguity is resolved upon resorting to the interpretation

that gives effect to all the words employed in the statute. In other words, even if there is an ambiguity arising out of the absence of the language in part of the statute, it is trumped by the requirement that a statute be construed as a whole and that all provisions be construed so as to render no part of the statute meaningless or superfluous. Thus, in any event, we hold that section 7--3--6 necessarily contemplates the interposition of an affirmative defense.

Defendant also argues that the existence of the annexation agreement affords it an affirmative defense to plaintiffs' petition for disconnection. In other words, the annexation agreement itself negates plaintiffs' entitlement to disconnection. We agree. Even if we were to hold that the language of section 7--3--6 did not afford a party the opportunity to interpose an affirmative defense to a petition for disconnection, we would hold that such an opportunity necessarily exists, at least as regards the factual scenario before us. It is fundamentally accepted that parties may contract away rights, even of constitutional dimension, as well as statutory rights. See, e.g., In re Nitz, 317 Ill. App. 3d 119, 124 (2000) ("Parties to a contract are free to include any terms they choose, as long as those terms are not against public policy and do not contravene some positive rule of law"). The existence of an annexation agreement implies that the parties contracted away their rights to sever the subject property from the annexing municipality for the life of the agreement. Thus, the existence of an annexation agreement would present an affirmative defense to a petition for disconnection or would estop the parties from petitioning for a disconnection. Therefore, even if we did not find that the language of the statute provided the opportunity to raise an affirmative defense, the freedom of parties to contract away statutory rights

would allow an existing annexation agreement to be considered as an affirmative defense or an estoppel of a party's right to seek disconnection. For these reasons, we hold that defendant established grounds why plaintiffs' property was not entitled to disconnection. Accordingly, we reverse the judgment of the trial court.

Plaintiffs cite to Indian Valley Golf Club, Inc. v. Village of Long Grove, 173 Ill. App. 3d 909 (1988), for the proposition that, once the statutory requirements of section 7--3--6 are met, the trial court is without discretion to deny a petition for disconnection. We find Indian Valley to be inapposite. First, the factual circumstances appear to be different. While the village in Indian Valley argued that the plaintiff should not be allowed to disconnect after voluntarily annexing into the village and reaping the benefits of so doing, it does not appear that the plaintiff was attempting to disconnect while an annexation agreement was still in force. Second, and more importantly, Indian Valley did not address the statutory interpretation of section 7--3--6 or consider the effect of raising an affirmative defense regarding why the property was not entitled to disconnection. These points serve to factually distinguish Indian Valley from this case.

Moreover, we have reviewed the cases relied upon by both parties in support of their arguments, and we find that none of them address the factual scenario with which we are presented: a plaintiff attempts to disconnect while an annexation agreement is still in force and the defendant raises the annexation agreement as an affirmative defense to demonstrate that the plaintiff's property is not entitled to disconnection. This factual difference renders this a case of first impression to which the authority cited by the parties provides little guidance.

Based on our resolution of this issue, we need not address defendant's remaining contentions. Further, plaintiffs offer no other responsive arguments as to why defendant cannot raise the annexation agreement as an affirmative defense or counterclaim negating plaintiffs' right to seek a disconnection. For the foregoing reasons, therefore, we reverse the judgment of the circuit court of McHenry County and instruct it to deny plaintiffs' petition for disconnection.

Reversed and remanded with directions.

CALLUM and GILLERAN JOHNSON, JJ., concur.