No. 2--06--1025          Filed: 9-27-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MAXIT, INC., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff and Counterdefendant-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 05--L--1058 |
| | ) | |
| JOHN VAN CLEVE and KELLEY VAN CLEVE, | ) | |
| | ) | |
| | ) | Honorable |
| Defendants and Counterplaintiffs-Appellants. | ) | Robert K. Kilander, |
| | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Defendants and counterplaintiffs (defendants) John and Kelley Van Cleve appeal the judgment of the circuit court of Du Page County granting plaintiff and counterdefendant (plaintiff) Maxit, Inc.'s motion for summary judgment and motion for judgment on the pleadings and denying their cross-motion for summary judgment. The trial court ruled that defendants released plaintiff from responsibility on a pending workers' compensation claim by signing a "Release of All Claims" that arose from defendants' claim against plaintiff's underinsured motorist policy. Defendants argue that the release released only the underinsured motorist claim and did not affect the workers' compensation claim. We agree and reverse.

On December 21, 2006, John Van Cleve was injured in a automobile accident. Apparently, another car caused John's vehicle to drive off the road. At the time of the accident, John was

employed by plaintiff and was driving one of plaintiff's trucks during the scope and course of his employment with plaintiff. The accident caused an injury to John's back.

On May 16, 2002, John filed a workers' compensation claim against plaintiff with the Industrial Commission, case No. 02--WC--2517. Plaintiff admits that, at the time of the accident, it was not covered by a workers' compensation insurance policy.

Thereafter, John also made a claim under plaintiff's underinsured motorist insurance policy. In September 2004, defendants settled the underinsured motorist claim in exchange for a payment of $800,000. As part of the settlement transaction, defendants signed a document entitled "Release of All Claims." We reproduce the text of the release in its entirety:

"[1] FOR AND IN CONSIDERATION of the payment to us at this time of the sum of $800,000, Eight Hundred Thousand Dollars, the receipt of which is hereby acknowledged, we being of lawful age, do hereby release, acquit and forever discharge **Maxit, Inc., Transportation Insurance Co,** [sic] and their agents, servants, successors, heirs, executors, insurers, administrators, all other persons, firms, corporations, associations or partnerships ('Releasees') or [sic] and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on or about 12/26/2001, and covered by Underinsured Motorist policy provisions in Policy No. 1035982371.

[2] We hereby declare and represent that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and that in making this release and agreement it is understood and agreed that we rely wholly upon our own

judgment, belief and knowledge of the nature, extent and duration of said injuries, with the advice of counsel and that we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

[3] In consideration of the aforesaid payment, John Van Cleve and Kelley R. Van Cleve agree to indemnify and hold forever harmless, Releasees, their heirs, successors, administrators, insurers or assigns from and against any and all claims, rights, duties, obligations, debts, liabilities, liens or causes of action of any kind and nature whether foreseen, unforeseen, contingent or actual, liquidated or unliquidated that have been or may hereafter and any time be made or brought against the said Releasees for the purpose of enforcing a further claim for damage on account of the alleged damages or injury sustained in consequence of the aforesaid accident.

[4] It is further understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the Releasees, by whom liability is expressly denied.

[5] We further agree that this release shall not be pleaded by us as a bar to any claim or suit.

[6] The undersigned acknowledge and agree that the aforesaid sum represent the full amount of damages due them according to the terms of Policy No. 1035982371 and further agree, in consideration of such payment, upon the Releasees [sic] request, to take such action

as may be necessary to recover from the owner or operator of such underinsured automobile the damages suffered by the undersigned. In the event of a recovery, the Releasees shall be reimbursed out of such recovery to the extent of any payment made to the undersigned; and in addition, shall be reimbursed for expenses, costs and attorney's fees by it in connection with such action.

under [sic]

[7] This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

[8] We further state that we have carefully read the foregoing release and know the contents thereof, and we sign the same as our own free act." (Emphases in original.) Both defendants signed the document. Randall Taradash, defendants' attorney at that time, signed the document as witness. No other persons signed the document.

In addition to the "Release of All Claims" quoted above, John signed a release with CNA Insurance Companies, apparently the insurer that provided plaintiff with the underinsured motorist policy. No explanation appears in the record regarding how or why Transportation Insurance Company was included in the "Release of All Claims" and why CNA was not. The CNA release was signed in October 2004, several weeks after the execution of the "Release of All Claims."

John continued to pursue his workers' compensation claim, sending a demand letter to plaintiff. On September 6, 2005, John and plaintiff entered into a written settlement agreement on John's workers' compensation claim, which agreement was approved by the Industrial Commission, now known as the Illinois Workers' Compensation Commission. Under the terms of the workers' compensation settlement, plaintiff paid John a total of $200,000 over several payments.

On October 19, 2005, plaintiff filed the complaint at issue in this appeal. In its complaint, plaintiff alleged that defendants breached the release by continuing to pursue John's workers' compensation claim after signing the release. Plaintiff alleged that the workers' compensation settlement and payment of $200,000 was pursuant to its duty to mitigate damages and consistently asserted that defendants were required by the terms of the release to relinquish further action on John's workers' compensation claim.

Defendants filed a counterclaim against plaintiff, alleging that plaintiff had fraudulently induced defendants to execute the "Release of All Claims." Defendants also filed affirmative defenses.

Eventually, plaintiff filed a motion for summary judgment and a motion for judgment on the pleadings, contending that the legal effect of the release precluded defendants from maintaining a counterclaim or affirmative defenses to its complaint. Defendants filed a cross-motion for summary judgment.

Plaintiff argued that the third paragraph of the "Release of All Claims" released it from any further obligation it might have under the workers' compensation claim. Defendants argued that the first paragraph clearly and unambiguously limited the release to the underinsured motorist claim. Alternatively, defendants contended that the release was ambiguous as a result of the language pertaining to the underinsured motorist claim in the first and sixth paragraphs of the release.

On September 7, 2006, the trial court heard argument on the motion and cross-motion for summary judgment and the motion for judgment on the pleadings. On September 11, 2006, the trial court granted judgment in favor of plaintiff and against defendants. The trial court held:

"As the damages for which recovery is sought in each venue arise from the same accident and seek compensation for the same resulting expenses and post-accident condition of the injured party, the Court finds they must necessarily be identical. Therefore, inclusion of the discussed phrase renders the Release neither limited nor ambiguous. The document is clear and unambiguous on its face and therefore subject to enforcement as a matter of law. It clearly expresses the Defendants' intent to release the Plaintiff ('Releasee') from any further financial responsibility proximately caused by the accident, and to indemnify Maxit, Inc. for any subsequent loss that might occur."

The trial court disposed of defendants' contention that adopting plaintiff's construction of the release frustrated and contravened the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2004)):

"Additionally, Defendants argue that by permitting recovery under the Release, this Court is effectively enforcing a waiver of Defendant's rights under the Workers' Compensation Act without Commission approval. It is agreed that no such approval was obtained in this case, and Defendants argues [sic] that enforcing the Release would be unlawful. Plaintiff counters by asserting that no waiver has occurred and that Defendant was free to pursue recovery under the Act, as indeed he did. However, Plaintiff argues, in so doing, the Release obliges Defendants to make good on their indemnification promise. The Court concurs with Plaintiff.

The undisputed facts establish that the Defendant did pursue further payment from Plaintiff for the same damages under a Workers Compensation action, causing Releasee to pay an additional $200,000.00 in settlement of that claim. The Court finds Defendants'

promise to indemnify contained in the September 10, 2004[,] Release to be enforceable under these circumstances."

The trial court entered judgment in favor of plaintiff and against defendants. Defendants timely appeal.

On appeal, defendants argue that the trial court should have granted their cross-motion for summary judgment because, among other reasons, the clear language of the release limited it to the underinsured motorist claim and because the release was executed without the approval of the Industrial Commission and, in the absence of Commission approval, is ineffective to release John's workers' compensation claim. Defendants also argue, in the alternative, that the trial court erred by granting plaintiff's motion for summary judgment because the existence of material factual issues should have precluded summary judgment. Last, defendants argue that the trial court should have denied plaintiff's motion for judgment on the pleadings because they had properly pleaded the elements comprising their affirmative defenses and counterclaim.

We begin by considering our standard of review. A motion for summary judgment is properly granted where the pleadings, depositions, admissions, and affidavits establish that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005 (West 2006); Gaylor v. Village of Ringwood, 363 Ill. App. 3d 543, 546 (2006). When the parties have filed cross-motions for summary judgment, they believe that the matter presents to the court no genuine issues of material fact, only questions of law. Gaylor, 363 Ill. App. 3d at 546. However, the fact that the parties filed cross-motions for summary judgment does not establish the absence of factual issues sufficient to preclude summary judgment; both the trial court and the reviewing court may independently determine that a genuine issue of material fact exists despite the

parties' belief that no factual issue exists. Gaylor, 363 Ill. App. 3d at 547. We review de novo the trial court's determination on cross-motions for summary judgment. Gaylor, 363 Ill. App. 3d at 547.

Defendants first argue that the plain language of the release demonstrates that they released only the underinsured motorist claim covered by plaintiff's underinsured motorist insurance and did not release John's pending workers' compensation claim. Defendants' argument raises an issue of contract interpretation, the determination of which is a question of law that this court reviews de novo. Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 129 (2005). The cardinal rule of contract interpretation is to give effect to the intent of the parties. Virginia Surety Co. v. Northern Insurance Co. of New York, 224 Ill. 2d 550, 556 (2007). The parties' intent is to be discerned from the language employed in the contract. Virginia Surety, 224 Ill. 2d at 556. If the contract language is unambiguous, it is to be given its plain and ordinarily understood meaning. Virginia Surety, 224 Ill. 2d at 556.

With these principles in mind, we review the language of the release along with the parties' contentions. Defendants contend that the language of the release is clear and unambiguous: it refers only to the underinsured motorist claim arising from John's December 26, 2001, accident. In particular, defendants point to paragraph 1 of the release and the language:

"[Defendants] do hereby release, acquit and forever discharge [plaintiff] and their agents, servants, successors, heirs, executors, insurers, administrators, all other persons, firms, corporations, associations or partnerships ('Releasees') or [sic] and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred

on or about 12/26/2001, and covered by Underinsured Motorist policy provisions in Policy

No. 1035982371."

According to defendants, this language releases claims that satisfy two conditions: (1) they arise from the December 26, 2001, accident, and (2) they were within the coverage of the CNA underinsured motorist insurance policy No. 1035982371. The insurance policy did not cover workers' compensation, because plaintiff admitted that it retained no workers' compensation insurance policy from any insurer. Thus, defendants conclude, the release does not operate on John's workers' compensation claim as it does not satisfy both conditions of the release.

Plaintiff, for its part, does not directly respond to defendants' textual analysis and wholly ignores paragraph 1 of the release. Instead, plaintiff points to paragraph 3 of the release and emphasizes the fact that it applies to "any and all claims" without reference to the underinsured motorist coverage. Paragraph 3 of the release provides:

"In consideration of the aforesaid payment, John Van Cleve and Kelley R. Van Cleve agree to indemnify and hold forever harmless, Releasees, their heirs, successors, administrators, insurers or assigns from and against any and all claims, rights, duties, obligations, debts, liabilities, liens or causes of action of any kind and nature whether foreseen, unforeseen, contingent or actual, liquidated or unliquidated that have been or may hereafter and any time be made or brought against the said Releasees for the purpose of enforcing a further claim for damage on account of the alleged damages or injury sustained in consequence of the aforesaid accident."

Plaintiff also contends that, where such a general release of "any and all claims" is executed at a time when the parties are aware of the existence of additional claims, the release is usually construed as

applying to the additional claims as well as the specifically mentioned claim. See Farm Credit Bank of St. Louis v. Whitlock, 144 Ill. 2d 440, 447 (1991) ("where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well"). According to plaintiff, the parties' possession of full knowledge of the pendency of the workers' compensation claim at the time the release was executed serves to bring the workers' compensation claim within the scope of the release.

We begin by considering Whitlock, which plaintiff cites for the proposition that the release should be construed to cover the known, existing workers' compensation claim, but which undercuts plaintiff's argument that the release is unambiguous and that parol evidence is prohibited. In Whitlock, the plaintiff bank sought to foreclose on the farm of the defendants' parents. The defendants had attempted to purchase a new farm, and the bank required that the defendants' parents sign loan No. 1 and put up their farm as collateral. In order to complete the purchase transaction, the defendants signed loan No. 2 and put up the property that they were purchasing as collateral. The two loans were executed at the same time and proceeds from the loans were used to pay off the parents' farm as well as to purchase the new farm for the defendants. The defendants later defaulted on loan No. 2. Whitlock, 144 Ill. 2d at 443-44. In order to avoid foreclosure, the defendants transferred their new land to the bank and executed a release in which the bank agreed to release the defendants from all claims. After executing the release, the bank sought to foreclose on the parents' farm. The defendants argued that the release acted as a bar to the foreclosure. Whitlock, 144 Ill. 2d at 444-45.

The bank argued that the release contained language restricting it to loan No. 2, because there were references in the release to the real estate mortgaged by loan No. 2, the loan No. 2 transaction

number was included on the release document, and the release document referred to the original principal amount of loan No. 2. The defendants argued that other factors indicated that the release encompassed both loans, including the facts that loan No. 1 was executed by both the defendants and their parents, loan No. 1 proceeds were used to purchase land for the defendants, the defendants paid down loan No. 1 in excess of their parents' mortgage payments on the parents' farm, and the bank suggested the manner of financing and prepared the documents. Whitlock, 144 Ill. 2d at 446.

The court determined that the release was ambiguous, because, while the release made references only to loan No. 2 and not loan No. 1, the parties were aware that claims might arise from loan No. 1, and it was not clear if the broad language of the release was intended to include loan No. 1 or to be limited only to loan No. 2. Whitlock, 144 Ill. 2d at 448. The court concluded that the ambiguity in the agreement required parol evidence to be taken on the parties' intent and that this factual issue on the parties' intent precluded the entry of summary judgment. Whitlock, 144 Ill. 2d at 448.

We find Whitlock to be factually similar to this case. Here, as in Whitlock, the release bears indicia that it is to apply only to claims arising under the underinsured motorist insurance policy and related to the December 26, 2001, accident. The release language highlighted by plaintiff in paragraph 3 of the release is, as in Whitlock, very broad and would ordinarily encompass any claims that were known at the time the parties executed the release. Likewise, as in Whitlock, the release is not clear on its face whether the parties intended to limit the operation of the release only to claims arising under the underinsured motorist policy or to John's workers' compensation claim as well. We need not pursue this line of inquiry further, however, because there is a further piece to the puzzle,

nonexistent in <u>Whitlock</u>, that tips the construction of the release here unambiguously towards defendants' interpretation.

John's injury occurred during the scope and course of his employment with plaintiff, resulting in a claim against plaintiff under the Act, and not under plaintiff's underinsured motorist insurance policy. Thus, the Act governs John's workers' compensation claim. Section 23 of the Act provides:

> "No employee, personal representative, or beneficiary shall have power to waive any of the provisions of this Act in regard to the amount of compensation which may be payable to such employee, personal representative or beneficiary hereunder except after approval by the Commission and any employer, individually or by his agent, service company or insurance carrier who shall enter into any payment purporting to compromise or settle the compensation rights of an employee, personal representative or beneficiary without first obtaining the approval of the Illinois Workers' Compensation Commission as aforesaid shall be barred from raising the defense of limitation in any proceedings subsequently brought by such employee, personal representative or beneficiary." 820 ILCS 305/23 (West 2004).

It has been long settled that an employer may not ignore this provision of the Act and enter into a settlement with its employee without the approval of the Illinois Workers' Compensation Commission. <u>Zurich General Accident & Liability Insurance Co. v. Industrial Comm'n</u>, 325 Ill. 452, 456-57 (1927). The release (and settlement with defendants) of John's workers' compensation claim, therefore, is not effective in the absence of the approval of the Commission.

This legal bar to settlement and release of the workers' compensation claim has ramifications in the interpretation of the release. Illinois law is clear: a contractual provision that violates public policy as expressed in statutory law is unenforceable and void. <u>Crossroads Ford Truck Sales, Inc.</u>

v. Sterling Truck Corp., 341 Ill. App. 3d 438, 445 (2003); see also Schweihs v. Davis, Friedman, Zavett, Kane & MacRae, 344 Ill. App. 3d 493, 501 (2003); Lo v. Provena Covenant Medical Center, 342 Ill. App. 3d 975, 984-85 (2003). Because of this, we cannot say that the parties intended that the release include the workers' compensation claim, as that intention would be unlawful, unenforceable, and void. Instead, we must construe a contractual provision, if possible, in such a way that it does not violate public policy and renders the contract enforceable, rather than unenforceable. Schweihs, 344 Ill. App. 3d at 501; Lo, 342 Ill. App. 3d at 984-85. In order for the release to be valid and enforceable, rather than unenforceable and void, then, we must conclude that the language of the release did not include within its scope John's pending workers' compensation claim. Thus, despite the potential ambiguity of the language of the release (see Whitlock, 144 Ill. 2d at 448), there is only one construction that renders the release valid and enforceable. Accordingly, we hold that the trial court erred by holding that the release encompassed John's workers' compensation claim, because that result violates the public policy of the State as embodied in the Act. Instead, the only interpretation of the release that does not violate public policy is the one that excludes John's workers' compensation claim from the scope of the release. This construction means that defendants are entitled to prevail, as a matter of law, on their cross-motion for summary judgment and we reverse the judgment of the trial court.

We note that defendants raise a number of other contentions in addition to their argument about the construction of the release. Specifically, defendants raise contentions that plaintiff lacked standing to pursue the claim, that the trial court did not have jurisdiction over the claim, that there was a lack of consideration for the release, and that plaintiff's claim was affirmatively barred by the voluntary payment doctrine. Additionally, defendants contend, in the alternative, that factual issues

should have been found to preclude the entry of summary judgment. Defendants further argue that their affirmative defenses all stated proper claims for relief that should not have been susceptible to dismissal pursuant to section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 2004)). Our resolution of the interpretation of the release, however, obviates defendants' other contentions and we need not address them.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BYRNE and GILLERAN JOHNSON, JJ., concur.