2015 IL App (2d) 150544
No. 2-15-0544
Opinion filed December 23, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| WKS CRYSTAL LAKE, LLC; EXCEED FLOOR AND HOME; CRYSTAL CORNERS, LLC; VIRGINIA PARK INVESTMENTS, LLC; CRYSTAL REAL ESTATE PARTNERS, LLC; KENSINGTON REALTY ADVISORS; CRYSTAL LAKE 31 14, LLC; INLAND SHOWPLACE, LLC; INLAND J8K, LLC; CRYSTAL HOME STATE BANK TRUST No. 3072; INLAND CRYSTAL POINT, LLC; INLAND BOHL FARM, LLC; SMK ENTERPRISES; UTEG APARTMENTS; TI CRYSTAL LAKE, LLC; EISENMANN CORPORATION; CLK ENTERPRISES, LLC; MERRYMAN 1, LLC; SCSA, LLC (Colonial Ice Cream Inc.); BRILLIANCE LAND MANAGEMENT, LLC; LAZZARA PROPERTIES, LLC; FOUR COLONIES CONDOMINIUM ASSOCIATION 1; COACH HOUSES OF CHASEFIELD CROSSING No. 1 CONDOMINIUM ASSOCIATION; CRYSTAL LAKE APARTMENTS LTD. PARTNERSHIP; WOLF REALTY; MENARD, INC.; DONALD AND ALANA O'CONNOR; SAINI GROUP, LLC; MIDWEST PETROLEUM DEVELOPMENT COMPANY; CENTRO BRADLEY; FUHLER PROPERTIES; FORWARD CAPITAL, LLC; DEL BOCA VISTA, LLC; 651 JCMTN, LLC; SPRING RIDGE MANOR HOME CONDOMINIUM ASSOCIATION; DAYTON HUDSON CORPORATION (Target); THE ASHTON POINTE AT CRYSTAL LAKE CONDOMINIUM ASSOCIATION; SOMERSET CONDOMINIUM ASSOCIATION OF CRYSTAL LAKE; ROBERT ROHRMAN; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of McHenry County.<br><br>No. 14-TX-10 |

CRYSTAL LAKE SHOPS, LLC; THE     )
CRYSTAL IN THE PARK UNIT ONE     )
HOMEOWNERS ASSOCIATION;     )
WESTWOOD PARK CONDOMINIUMS OF   )
CRYSTAL LAKE ASSOCIATION; PINGRY  )
PLACE HOMEOWNERS ASSOCIATION;    )
REDMOND MURPHY; SPRING RIDGE OF  )
CRYSTAL LAKE UMBRELLA     )
ASSOCIATION; ATKINSON AGENCY,   )
LLC (Central Park Place); MJK     )
CRYSTAL LAKE REAL ESTATE     )
HOLDINGS; CRYSTAL CHATEAU     )
CONDOMINIUM ASSOCIATION, INC.;   )
INDIAN HILL TRAILS PROPERTY     )
OWNERS ASSOCIATION, INC.; TWIN   )
PONDS, LLC; JACKSON ENTERPRISES,  )
LLC; MARTIN CHEVROLET; and HOME  )
DEPOT,     )
    )
    Plaintiffs-Appellees,     )
    )
v.     )
    )
WILLIAM LeFEW, in His Official Capacity  )
as McHenry County Treasurer and *ex-officio*  )
McHenry County Collector,     )
    )
    Defendant     )
    )
(The City of Crystal Lake, Intervenor-  )
Appellant; Community Consolidated School  )   Honorable
District 47 and Community High School  )   Michael T. Caldwell,
District 155, Intevenors).     )   Judge, Presiding.

_____

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, who pay property taxes that fund the intervenors' expenditures, challenged

the propriety of the 2013 tax levy ordinance enacted by one of the intervenors, the City of

Crystal Lake (City). The circuit court of McHenry County granted summary judgment in favor

of the plaintiffs, holding that the tax levy had not been validly enacted and ordering the City to refund the plaintiffs' tax payments for that year. The City appeals. We reverse.

¶ 2                                    BACKGROUND

¶ 3     The City is a home rule body. It has a mayor and six council members, who together make up the city council. The City's ordinances include section 18-6, which governs the conduct of city council meetings. Crystal Lake Municipal Code § 18-6 (adopted Jan. 19, 1993), *available at* http://ecode360.com/8610712. Subsection 18-6(B) provides that "[a] majority of the elected members of the Council shall constitute a quorum thereof, but no ordinance or measure for the expenditure or [*sic*] money shall be passed without the affirmative vote of the elected members, pursuant to the provisions of the Illinois Compiled Statutes." *Id*. § 18-6(B). Subsection 18-6(D) provides that "[t]he rules of parliamentary practice comprised in the latest published edition of Roberts [*sic*] Rules of Order Revised shall govern all general or special meetings of the City Council to the extent that they are not inconsistent with rules of procedure specified in ordinances of the City or in the Illinois Compiled Statutes." *Id*. § 18-6(D).

¶ 4     On December 17, 2013, the city council met to, among other things, adopt a tax levy ordinance (Ordinance No. 6990, hereinafter Ordinance) for the period of May 1, 2013, through April 30, 2014. Five members of the city council were present. A majority of those present (three members) voted in favor of the Ordinance. Without objection, the mayor declared that the Ordinance had passed. Subsequently, at the January 7, 2014, city council meeting, all seven members of the city council approved the minutes of the December 17, 2013, meeting.

¶ 5     On November 12, 2014, the plaintiffs filed a three-count complaint in the circuit court of McHenry County. Count I was directed toward the City's levy and alleged that the Ordinance was invalid because it had not received the affirmative vote of a majority of the city council (four members). Each of the other two counts was directed at one of the other two intervenors herein,

both of which are local school districts. As those counts and intervenors are not at issue in this appeal, we do not discuss them further.

¶ 6    Less than a week after filing their complaint, the plaintiffs filed a motion for summary judgment as to count I, seeking a ruling in their favor on the legal question of the Ordinance's validity and an order requiring the City to refund the taxes that each plaintiff had paid pursuant to the Ordinance. On December 1, 2014, the City was granted leave to file a motion to intervene, to which the plaintiffs did not object.

¶ 7    On December 16, 2014, the city council met and unanimously adopted "An Ordinance Ratifying and Amending Ordinance No. 6990" (Ratification Ordinance). The Ratification Ordinance recited the events leading up to the adoption of the Ordinance and set out the City's voting procedures as embodied in section 18-6 of the City's code; found that the Ordinance had been passed in conformity with those procedures; and ratified the Ordinance.

¶ 8    On December 30, 2014, the City filed its answer and affirmative defenses, along with a response to the plaintiffs' motion for summary judgment. Two weeks later, the City filed a cross-motion for summary judgment on count I.

¶ 9    On March 23, 2015, after briefing of the cross-motions and oral argument, the trial court issued an oral ruling in favor of the plaintiffs, finding the Ordinance invalid. The City moved orally for discovery; this motion was denied. On April 7, the trial court issued a written order memorializing its earlier ruling. The trial court found that the Ordinance was invalid because it had not received four affirmative votes and that the Ratification Ordinance did not cure this invalidity.

¶ 10    On April 22, 2015, the City filed two motions: one for reconsideration and one for discovery. On May 12, 2015, the trial court denied both motions. The court's order of that date

contained a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay enforcement or appeal of the order. This appeal followed.

¶ 11                                         ANALYSIS

¶ 12    On appeal, the City contends that the trial court erred in finding that the Ordinance was invalid. It also argues that, if we affirm the trial court's ruling, it should be allowed to conduct discovery regarding the refund to be paid to each plaintiff. As we conclude that the trial court erred in granting summary judgment for the plaintiffs and instead should have granted summary judgment in favor of the City, we do not reach this second issue.

¶ 13    A motion for summary judgment is properly granted where the pleadings, depositions, admissions, and affidavits establish that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2014); *Gaylor v. Village of Ringwood*, 363 Ill. App. 3d 543, 546 (2006). When the parties have filed cross-motions for summary judgment, they believe the matter presents to the court no genuine issues of material fact, only questions of law. *Gaylor*, 363 Ill. App. 3d at 546. We review *de novo* the trial court's determination on cross-motions for summary judgment. *Id*. at 547. Further, where the grant of summary judgment is based on the trial court's interpretation of a statute, we review that interpretation *de novo*. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003).

¶ 14    The plaintiffs attacked the Ordinance on the ground that it was not validly enacted, having received the affirmative votes of only three members of the city council. They concede that the City is a home rule municipality and thus, unless specifically barred by state law, it may adopt voting procedures that differ from those required by state law. See *Allen v. County of Cook*, 65 Ill. 2d 281, 288 (1976) (home rule body may reduce the margin for passage of an ordinance from the state law requirement of two-thirds to a simple majority); see also *City of*

*Chicago v. Roman*, 184 Ill. 2d 504, 512 (1998) (tracing the expansion of home rule powers under the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, § 6): except as otherwise limited, home rule units may exercise any power including the power to tax).

¶ 15    The plaintiffs argue, however, that subsection 18-6(B) of the City's code "adopts the requirements of" section 3.1-40-40 of the Illinois Municipal Code (65 ILCS 5/3.1-40-40 (West 2014)), thereby incorporating that provision into the City's code. Section 3.1-40-40 states that, "unless otherwise expressly provided by *** any other Act governing the passage of any ordinance, resolution, or motion," municipal ordinances may only be passed by "the concurrence of a majority of all members then holding office on the city council, including the mayor." *Id.*

¶ 16    In considering this argument, we begin with the language of the provision at issue, subsection 18-6(B). The best indicator of the intent of a statute or other legislative enactment is the plain language of the statute. *Lee*, 208 Ill. 2d at 43. "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Id.* We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002). "One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole," and thus "words and phrases must be interpreted in light of other relevant provisions of the statute." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007).

¶ 17    Here, the language of the statute is quite clear. Subsection 18-6(B) first states that "[a] majority of the elected members of the Council shall constitute a quorum"—that is, the minimum number of persons who must be present for a body to transact official business. See Black's Law Dictionary 1263 (7th ed. 1999). As the total number of city council members is seven, that body may transact official business at any meeting where at least four members are present. On December 17, 2013, five members were present, and thus there was a quorum.

¶ 18    Further, the City's code also provides that parliamentary procedure at meetings will be governed by Robert's Rules of Order (see Crystal Lake Municipal Code § 18-6(D) (adopted Jan. 19, 1993), *available at* http://ecode360.com/8610712), and those rules permit the transaction of business by a concurrence of the majority of the members who are present (Henry M. Robert III *et al.*, Robert's Rules of Order Newly Revised § 46 (11th ed. 2011)).  Thus, under section 18-6, the affirmative vote of three members—the majority of those city council members who were present on December 17, 1993—was sufficient to pass the Ordinance.

¶ 19    The plaintiffs' argument that section 18-6 of the City's code "adopts" the voting requirements of a state statute is based on the second portion of subsection 18-6(B), which qualifies the procedure outlined above by adding an exception:  "no ordinance or measure for the expenditure or [*sic*] money shall be passed without the affirmative vote of the elected members, pursuant to the provisions of the Illinois Compiled Statutes."  Crystal Lake Municipal Code § 18-6(B) (adopted Jan. 19, 1993), *available at* http://ecode360.com/8610712).  The plaintiffs argue that, by referring to the Illinois Compiled Statutes, subsection 18-6(B) incorporates the requirements of section 3.1-40-40 of the Municipal Code, which requires the approval of an absolute majority of the city council (*i.e.*, four affirmative votes) for the passage of any ordinance.

¶ 20    We begin by noting that subsection 18-6(B)'s reference to "the Illinois Compiled Statutes" (*id.*) is so broad as to be almost meaningless.  The Illinois Compiled Statutes encompass all of the statutes in Illinois, on an extraordinary range of topics, most of which have nothing to do with the issue before us.  And, although the placement of this reference to "the Illinois Compiled Statutes"—in a provision of the City's code dealing with procedures for enactments related to spending—suggests that the drafters might have had in mind statutes

relevant to that topic, this is far from an explicit reference to section 3.1-40-40 of the Municipal Code.

¶ 21    Moreover, even if this general reference to "the Illinois Compiled Statutes" were read as referring specifically to section 3.1-40-40, the plaintiffs' argument is flatly refuted by the language of subsection 18-6(B), which makes clear that "the affirmative vote of the elected members" is required only for the passage of ordinances "for the expenditure [of] money." *Id*. The Ordinance does not fall within this category: it was directed not to the *expenditure* of money but to the *raising* of money through a tax levy. Taxation is not the same as spending, and the two are consistently treated as involving different powers of government. Indeed, the Municipal Code itself treats the two differently, regulating ordinances relating to annual appropriations (see 65 ILCS 5/8-2-1 *et seq*. (West 2014)) separately from ordinances relating to the levying and collecting of taxes (see 65 ILCS 5/8-3-1 *et seq*. (West 2014)). Additionally, the power to levy property taxes is an area particularly subject to a municipality's home rule powers. See Ill. Const. 1970, art. VII, § 6(h) ("The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power ***."); see also *id*. § 6(g) (any legislation to limit or deny the taxing power of a home rule unit must be passed by a three-fifths majority of the General Assembly).

¶ 22    Notably, the plaintiffs make no effort to argue that a tax levy ordinance is equivalent to an ordinance for spending or appropriation. Rather, in arguing that subsection 18-6(B) imposes state law voting requirements, the plaintiffs simply ignore the phrase "for the expenditure of money," and instead quote the provision as if that phrase did not exist: "no ordinance *** shall be passed without the affirmative vote of the elected members, pursuant to the provisions of the Illinois Compiled Statutes." The plaintiffs then use this incomplete quotation to argue that the passage of the Ordinance required four affirmative votes. When a party fails to accurately quote

the entire statutory provision as occurred here, it leads to one conclusion—that the party is attempting to mislead the court. Unfortunately, it appears this attempt was successful in the trial court. This behavior will not be tolerated.

¶ 23    A court may not, in the guise of interpreting a statute, ignore its plain language and read into it exceptions, limitations or conditions that conflict with the express legislative intent. *Petersen*, 198 Ill. 2d at 446. Subsection 18-6(B), to the extent that it can be read as incorporating the voting procedures of section 3.1-40-40 of the Municipal Code, clearly does so only for ordinances involving the expenditure of money, not those involving the levying of taxes. Accordingly, any requirement of four affirmative votes cannot be read as applying to the Ordinance.

¶ 24    The plaintiffs next argue that a different subsection of the City's code, subsection 18-6(D), also refers to the Illinois Compiled Statutes and thereby incorporates the voting requirements of section 3.1-40-40 of the Municipal Code. That subsection provides that Robert's Rules of Order will govern city council meetings "to the extent that [those rules] are not inconsistent with rules of procedure specified in ordinances of the City or in the Illinois Compiled Statutes." Crystal Lake Municipal Code § 18-6(D) (adopted Jan. 19, 1993), *available at* http://ecode360.com/8610712. The plaintiffs assert that section 3.1-40-40 of the Municipal Code is inconsistent with Robert's Rules of Order, and thus under subsection 18-6(D), the voting procedures established by Robert's must yield to those of the Municipal Code.

¶ 25    We reject this premise because section 3.1-40-40 of the Municipal Code does not conflict with the City's adoption of Robert's Rules of Order. Rather, section 3.1-40-40 explicitly permits the adoption of different voting procedures: "The passage of all ordinances for whatever purpose *** shall require the concurrence of a majority of all members then holding office on the city council, including the mayor, *unless otherwise expressly provided by this Code or any other Act*

*governing the passage of any ordinance, resolution, or motion.*" (Emphasis added.) 65 ILCS 5/3.1-40-40 (West 2014). As our supreme court has explained, unless the powers of a home rule unit have been explicitly circumscribed in a particular area by the General Assembly, home rule units are "sovereign[s]," co-equal in stature to the General Assembly, and their legislative enactments (ordinances) have the same or greater force as state laws. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶¶ 31-32. Section 18-6 of the City's code—and its adoption of Robert's Rules of Order to provide the voting procedures generally applicable in city council meetings—operates as a statute "governing the passage of *** ordinance[s]" within the City. Section 3.1-40-40 of the Municipal Code explicitly yields to such home rule ordinances. Thus, it is not "inconsistent" with the City's code.

¶ 26    As we have noted, the General Assembly may restrict or even deny the exercise of a particular power by a home rule unit. However, to do so, "the General Assembly must enact a law *specifically* stating home rule authority is limited." (Emphasis in original.) *Id*. ¶ 32. No such limiting statement appears in section 3.1-40-40 of the Municipal Code; to the contrary, that section expressly defers to the procedures contained in other laws. 65 ILCS 5/3.1-40-40 (West 2014). Section 3.1-40-40 does not restrict the City from using the voting procedures embodied in Robert's Rules of Order to pass legislation such as the Ordinance.

¶ 27    The plaintiffs cite *Nielsen-Massey Vanillas, Inc. v. City of Waukegan*, 276 Ill. App. 3d 146 (1995), and *City of Belleville v. Illinois Fraternal Order of Police Labor Council*, 312 Ill. App. 3d 561 (2000), for the proposition that, in order to override the provisions of the Municipal Code, a home rule unit must enact an ordinance doing so. Here, however, the City did exactly that when it enacted section 18-6 shortly after it became a home rule municipality. Accordingly, these cases are inapplicable to the issue presented here.

¶ 28   The plaintiffs next contend that the Ordinance itself imposed the requirement of four affirmative votes for passage, because it recited that "this Levy Ordinance is adopted pursuant to the procedures set forth in the Illinois Municipal Code."   Although this reference to the Municipal Code is somewhat more specific than the general reference to the Illinois Compiled Statutes, it is still far short of an explicit reference to section 3.1-40-40 of the Municipal Code. And, as we noted above, even if this reference could be read as referring to section 3.1-40-40, that section itself permits the adoption of other voting procedures.   The City has adopted such procedures and thus is not bound by the voting requirements of section 3.1-40-40.   Finally, the quoted language is merely a descriptive statement.   Even if it could be read as stating that the Ordinance had been passed by four affirmative votes—an incorrect statement—the inaccuracy of the statement would not affect the validity of the Ordinance.   To be validly enacted pursuant to the procedures set out in the City's code, the Ordinance must have been voted upon at a meeting where a quorum of the city council was present, and it must have received the majority of the votes cast.   As these conditions were met, the Ordinance is valid.   The trial court erred in granting summary judgment in favor of the plaintiffs and in denying the City's motion for summary judgment.

¶ 29   The City raises a variety of other arguments in support of its position, including the argument that, even if the Ordinance was not properly enacted, its passage was ratified through the later actions of the entire city council.   As we hold that the Ordinance was validly enacted, we need not reach these arguments.

¶ 30                                    CONCLUSION

¶ 31   For the foregoing reasons, the order of the circuit court of McHenry County granting summary judgment in favor of the plaintiffs as to count I is reversed, and judgment on that count is entered in favor of the City of Crystal Lake.

¶ 32     Reversed; judgment entered.