CENTRAL ILLINOIS LIGHT COMPANY, Plaintiff-Appellant, v. THE CITY OF SPRINGFIELD, Defendant-Appellee.

Fourth District No. 4—87—0151

Opinion filed October 7, 1987.

William L. Kasley and Mary Ellyn R. Hogan, both of Peoria, for appellant.

William A. Murray, Assistant Corporation Counsel, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

This case concerns the relationship between (1) the first paragraph of section 5 of the Electric Supplier Act (Act) (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 405), which purports to entitle an electrical supplier to serve customers at "locations" which it was serving on July 2, 1965; (2) section 14 of the Act (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 414) which states, in part, that nothing in the Act shall "impair, abridge, or diminish in any way the powers, rights and privileges of incorporated municipalities"; and (3) section 11—117—1 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1985, ch. 24, par. 11—117—1), which authorizes a municipality to operate a public utility and sell its services to its inhabitants.

The question presented is whether defendant, city of Springfield (city), operator of a municipal power plant, can validly contract with the owner of a certain tract recently annexed to the city to be the exclusive source of electricity for that tract even though plaintiff, Central Illinois Light Company (CILCO), had been providing such service to that tract since prior to July 2, 1965. We hold that such a contract is valid.

On October 3, 1986, CILCO filed a complaint in the circuit court of Sangamon County seeking declaratory and injunctive relief to prevent the city from providing electrical power to the previously described tract. Upon the city's motion, on February 2, 1987, the court dismissed the complaint for failure to state a cause of action. CILCO has appealed. We affirm.

The complaint alleged as follows: (1) prior to and on June 2, 1965, the effective date of the Act (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 401 et seq.), CILCO supplied electricity to an area known as Harrison Park in Sangamon County; (2) CILCO continued to provide such services up until June 11, 1986, when the sole structure on the premises was demolished so that the land could be subdivided and sold; (3) on September 16, 1986, the city annexed the Harrison Park property to Springfield; and (4) in its capacity as a municipal utility, the city con-

tracted with the landowner to become the exclusive supplier of electricity for the subdivision.

CILCO makes two major arguments on appeal. The first is that the first paragraph of section 5 of the Act (Ill. Rev. Stat. 1985, ch. 111⅔, par. 405) gives it an exclusive right to serve the Harrison Park tract. CILCO's second contention is that its property rights will be violated if the city is allowed to proceed unhindered.

■ CILCO recognizes that the city is not an "electric supplier" within the meaning of the Act (Ill. Rev. Stat. 1985, ch. 111⅔, pars. 3—105, 403.5, 403.14). CILCO also agrees that the combined effect of the foregoing provision of section 14 of the Act (Ill. Rev. Stat. 1985, ch. 111⅔, par. 414), which states that nothing in the Act affects the "rights and powers" of municipalities, and section 11—117—1 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—117—1), which grants municipalities the power to operate a power plant, appears to permit the city to furnish electrical service to the tract in question. However, CILCO maintains that, if we consider all of the provisions of the Act as intended to be consistent and *in pari materia* (*Sinnock v. Board of Fire & Police Commissioners* (1985), 131 Ill. App. 3d 854, 476 N.E.2d 492), we are required to reach a different result.

CILCO seeks to draw an analogy to the decision of this court in *Western Illinois Electrical Cooperative v. Illinois Commerce Com.* (1979), 67 Ill. App. 3d 603, 385 N.E.2d 149. There, an electric cooperative was serving a 120-acre rural tract on July 2, 1965, and continued to do so until a portion of the tract was annexed to a municipality. This court noted that provisions of section 14 of the Act (Ill. Rev. Stat. 1977, ch. 111⅔, par. 414), which were the same then as now, generally prohibited a supplier who furnished service to an area while it was rural to continue to do so after annexation to a municipality unless certain conditions arose or were met. However, this court concluded that the first paragraph of section 5 of the Act (Ill. Rev. Stat. 1977, ch. 111⅔, par. 405), also the same then as now, operated as an exception to those provisions of section 14; such exception granted a supplier serving the location on July 2, 1965, the right to continue to do so after annexation without meeting the requirements of section 14.

The difficulty with CILCO's attempted analogy is that it begs the question of whether the legislature intended the first paragraph of section 5 of the Act (Ill. Rev. Stat. 1985, ch. 111⅔, par. 405(a)) to provide territorial rights to a supplier which it could assert against a municipality which also seeks to serve that territory with electric power. As CILCO contends, legislation concerning territorial rights of

suppliers of services such as electricity should be construed to create a harmonious system. (*Stelzer v. Matthews Roofing Co.* (1986), 140 Ill. App. 3d 383, 488 N.E.2d 1293.) The wisdom or even fairness of granting less protection to the territorial rights of suppliers where opposed by municipalities rather than other suppliers may be questioned, but we do not find a lack of harmony necessarily exists.

Again, considering: (1) the city is not an "electrical supplier"; (2) the Act is not intended to affect the "rights and powers" of the city (Ill. Rev. Stat. 1985, ch. 111⅔, par. 414); and (3) the city has the power to operate a plant and sell electricity to its inhabitants, we hold the Act does not give CILCO any territorial rights which prohibit the city from furnishing services to the tract in question.

■ To support its second contention that it has a property right to furnish service to the area in question, CILCO cites *City of Kosciusko v. Mississippi Power & Light Co.* (Miss. 1979), 370 So. 2d 1339. There, the Mississippi Supreme Court affirmed a lower court's decision to enjoin a municipally owned utility from providing electricity to a newly annexed area. It concluded that to hold otherwise "would make a shambles of the orderly and regulated scheme of utility service." (370 So. 2d 1339, 1341.) In addition, it found the public utility possessed a property right to service the area, since it had obtained a certificate of public convenience and necessity to operate there.

We conclude *City of Kosciusko* is not analogous, however. The Illinois Public Utilities Act states a certificate of public convenience and necessity does not give its holder "an exclusive privilege, immunity or franchise." (Ill. Rev. Stat. 1985, ch. 111⅔, par. 8–406(e).) Moreover, the certificate bears little resemblance to the entitlement to continue to serve certain customers. We find CILCO possessed no property right in the Harrison Park service area to the exclusion of the city.

Because CILCO has no property right to serve the area in question, no merit exists in its claim that the city was required to obtain approval of the Commerce Commission and then proceed in eminent domain (Ill. Rev. Stat. 1985, ch. 110, par. 7–102) before contracting to serve the annexed area.

Finally, CILCO maintains that, by annexing the tract, the city acquired indirectly an opportunity to serve the area which it could not have done directly without annexation. This is because section 11–117–1 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 11–117–1) prohibits the city, without CILCO's permission, from serving any tract outside the city currently being served by CILCO. However, we note the ordinary methods by which annexation takes place depend upon

the desires of the majority of people owning land or being registered voters in the area to be annexed. (Ill. Rev. Stat. 1985, ch. 24, pars. 7—1—2, 7—1—11.) In any event, the annexation of territory to a municipality has many consequences and creates a new relationship between the inhabitants involved and the municipality. We do not deem annexation to be an impermissible method of doing indirectly that which could not be done directly. This is true even if the main purpose behind the annexation was to make the property available in order to provide it with municipal utility service.

We are not unconcerned with the disparity in treatment in regard to territorial rights in property annexed to a municipality when the entities seeking those rights are both "electrical suppliers" as against the situation when the rights of the municipality to furnish the service are involved. However, we note the disparity is the most acute when the supplier was servicing the territory on July 2, 1965. Under those circumstances, the supplier has substantial rights because of the exception in the first paragraph of section 5 of the Act (Ill. Rev. Stat. 1985, ch. 111²⁄₃, par. 405) previously discussed. If a supplier was not furnishing service on July 2, 1965, the provisions of section 14 of the Act (Ill. Rev. Stat. 1985, ch. 111²⁄₃, par. 414) control. Under those provisions, the rights of the supplier providing service at the time of annexation are much more limited.

We conclude by noting that our decision here is consistent with that in *Rural Electric Commerce Cooperative Co. v. Village of Chatham*, Case Nos. ESA 235, ESA 236, ESA 237 (Ill. Commerce Com.), Sept. 2, 1987.

We affirm for the reasons stated.

Affirmed.

SPITZ, P.J., and LUND, J., concur.