2018 IL App (4th) 170755
NO. 4-17-0755

FILED
November 13, 2018
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE CITY OF SPRINGFIELD, ILLINOIS, a Municipal Corporation, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Sangamon County |
| v. | ) | |
| AMEREN ILLINOIS COMPANY, d/b/a AMEREN ILLINOIS, | ) ) | No. 13MR800 |
| Defendant-Appellant. | ) ) ) ) | Honorable John P. Schmidt, Judge Presiding |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1          In September 2013, the City of Springfield (the city) filed a complaint for declaratory judgment against Ameren Illinois Company, d/b/a Ameren Illinois (Ameren). The city alleged that, based upon section IX of a franchise agreement and prior case law, it had the exclusive right to provide electricity to residents living in an area which it had recently annexed, excepting only those residents who opted to retain Ameren after annexation. In September 2016, the city filed a motion for summary judgment. 735 ILCS 5/2-1005 (West 2016). In September 2017, the trial court granted the city's motion for summary judgment.

¶ 2          Ameren appeals, arguing that the trial court's grant of summary judgment was improper because (1) Ameren has a statutory right to continue to serve its customers, (2) section IX of the franchise agreement is unenforceable because it required the approval of the Illinois

Commerce Commission, (3) the trial court lacked jurisdiction to enter its grant of summary judgment, and (4) section IX of the franchise agreement violates public policy. The city argues that the franchise agreement gives it the right to provide electricity to the newly-annexed residents.

¶ 3    We conclude that Ameren has a statutory right to continue to serve its customers. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with the views expressed herein.

¶ 4                                     I. BACKGROUND

¶ 5                                     A. The Complaint

¶ 6    In September 2013, the city filed a complaint for declaratory judgment against Ameren. The city alleged that it had the exclusive right to provide electricity to residents whose property had been recently annexed into the city, excepting only those residents who opted to retain Ameren after annexation. The city based its claim upon (1) section IX of the franchise agreement between the city and Ameren and (2) this court's decision in *Central Illinois Light Co. v. City of Springfield*, 161 Ill. App. 3d 364, 514 N.E.2d 602 (1987).

¶ 7    Section IX of the franchise agreement provides as follows:

> "This franchise is granted for the sole purpose of permitting [Ameren] to serve existing customers in the [c]ity who have opted to continue to receive service from [Ameren] after annexation, to serve customers of [Ameren] who annex to the [c]ity and which [Ameren] has a right to continue to serve and the customer has not requested service from the [c]ity, and to provide electric service to customers within [Ameren's] authorized service areas outside the corporate limits of the [c]ity or to make interconnections with the city or other electric

systems. Unless approved by the [c]ity or other entity having authority to approve such action, [Ameren] shall not otherwise provide or furnish electric energy at retail within the present or future corporate limits of the city, or service territory of the [c]ity, and nothing herein contained shall be construed as a grant or franchise to [Ameren] to conduct such business in the [c]ity."

¶ 8       In *Central Illinois Light Co.*, 161 Ill. App. 3d at 367, this court concluded that because "the city has the power to operate a [power] plant and sell electricity to its inhabitants, we hold the [Electric Supplier] Act does not give CILCO (Central Illinois Light Company) any territorial rights which prohibit the city from furnishing services to the tract in question."

¶ 9                    B. Ameren's Motion to Dismiss and Answer

¶ 10       In January 2014, Ameren filed a motion to dismiss. 735 ILCS 5/2-619.1 (West 2014). In December 2014, the trial court denied this motion. In January 2015, Ameren filed an answer, affirmative defenses, and counterclaims. These affirmative defenses and counterclaims are not raised on appeal.

¶ 11                    C. The City's Motion for Summary Judgment

¶ 12       In September 2016, the city filed a motion for summary judgment, arguing it had the exclusive right to provide electricity to residents living in an area that was recently annexed into the city, excepting only those residents who opted to retain Ameren after annexation. 735 ILCS 5/2-1005 (West 2016). The city based its argument on (1) section 11-117-6(b) of the Illinois Municipal Code (65 ILCS 5/11-117-6(b) (West 2016)), (2) this court's decision in *Central Illinois Light Co.*, and (3) section IX of the franchise agreement.

¶ 13       In July 2017, Ameren filed a response to the city's motion for summary judgment, in which Ameren argued that the city did not have an exclusive right to provide electricity to the

residents of the recently annexed area because (1) the Illinois Municipal Code allowed Ameren to continue serving its existing customers despite the annexation, (2) *Central Illinois Light Co.* was abrogated by modifications to the Illinois Municipal Code, (3) section IX of the franchise agreement was invalid, (4) the trial court lacked jurisdiction to grant the relief requested by the city, and (5) a question of fact remained as to whether all of the customers requested their electrical service be transferred to the city.

¶ 14                                D. The Trial Court's Order

¶ 15        In September 2017, the trial court granted the city's motion for summary judgment. When granting the motion for summary judgment, the court concluded that there was no issue of material fact and that it had jurisdiction. The court ruled that the city had the exclusive right to provide electricity to residents whose property had been recently annexed, excepting only those residents who opted to retain Ameren after annexation. The court based this conclusion upon section 11-117-6(b) of the Illinois Municipal Code, section IX of the franchise agreement, and this court's prior ruling in *Central Illinois Light Co.*, 161 Ill. App. 3d at 367. 65 ILCS 5/11-117-6(b) (West 2016).

¶ 16        This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18        Ameren appeals, arguing that the trial court's grant of summary judgment was improper because (1) Ameren has a statutory right to continue to serve its customers, (2) section IX of the franchise agreement is unenforceable because it required the approval of the Illinois Commerce Commission, (3) the trial court lacked jurisdiction to enter its grant of summary judgment, and (4) section IX of the franchise agreement violates public policy. The city argues that the franchise agreement gives it the right to provide electricity to the newly annexed

- 4 -

residents.

¶ 19 We conclude that Ameren has a statutory right to continue to serve its customers. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with the views expressed herein.

¶ 20 A. Summary Judgment and the Standard of Review

¶ 21 The purpose of summary judgment is not to try an issue of fact but to determine whether a genuine issue of material fact exists. *Evans v. Brown*, 399 Ill. App. 3d 238, 243, 925 N.E.2d 1265, 1270 (2010). Summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. *Enbridge Pipeline (Illinois), LLC v. Temple*, 2017 IL App (4th) 150346, ¶ 69, 80 N.E.3d 784. When determining whether a genuine issue of material fact exists, the court must construe all pleadings and attachments strictly against the moving party and liberally in favor of the nonmoving party. *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818, ¶ 23, 974 N.E.2d 914. A triable issue exists when there is a dispute concerning material facts or when those facts are undisputed but reasonable persons might draw different inferences from those facts. *Messerly v. Boehmke*, 2014 IL App (4th) 130397, ¶ 32, 8 N.E.3d 57. Summary judgment is a drastic means of disposing of litigation and, therefore, should only be allowed when the right of the moving party is clear and free from doubt. *Lee v. Six Flags Theme Parks, Inc.*, 2014 IL App (1st) 130771, ¶ 61, 10 N.E.3d 444. A trial court's ruling on a motion for summary judgment is reviewed *de novo*. *Boehmke*, 2014 IL App (4th) 130397, ¶ 32.

¶ 22 B. Ameren's Statutory Right

¶ 23 Ameren argues it has a statutory right to continue to serve its recently annexed

customers. We agree.

¶ 24                                    1. *The Applicable Law*

¶ 25            "The primary goal of statutory construction is to determine and execute the intent of the legislature." *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2018 IL App (4th) 150519-B, ¶ 43, 99 N.E.3d 210. The language of a statute, given its plain and ordinary meaning, is the best indication of the legislature's intent. *People v. Burlington*, 2018 IL App (4th) 150642, ¶ 16, 99 N.E.3d 577. A court must view a statute as a whole, construing words and phrases in light of other relevant provisions. *People v. Jackson*, 2011 IL 110615, ¶ 12, 955 N.E.2d 1164. Courts presume that the legislature is aware of judicial decisions interpreting a statute. *Pielet v. Pielet*, 2012 IL 112064, ¶ 48, 978 N.E.2d 1000. Courts further presume that every amendment to a statute is made with a purpose. *People v. Almond*, 2015 IL 113817, ¶ 39, 32 N.E.3d 535. Statutory construction is a question of law reviewed *de novo*. *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 13, 79 N.E.3d 184.

¶ 26            The Illinois Municipal Code authorizes municipalities to operate public utilities. Ill. Rev. Stat. 1985, ch. 24, ¶ 11-117-1 (now at 65 ILCS 5/11-117-1 (West 2016)). The Electric Supplier Act states that an "electric supplier is entitled *** [to] furnish service to customers at locations which it is serving on the effective date of this Act." Ill. Rev. Stat. 1985, ch. $111^2/_3$, ¶ 405(a) (now at 220 ILCS 30/5 (West 2016)). However, under the Electric Supplier Act, a municipality is not an "[e]lectric [s]upplier." Ill. Rev. Stat. 1985, ch. $111^2/_3$, ¶¶ 403.5, 403.8 (now at 220 ILCS 30/3.5, 3.8 (West 2016)). Furthermore, the Electric Supplier Act explicitly states that "[n]othing in this Act shall be construed to impair, abridge, or diminish in any way the powers, rights and privileges of incorporated municipalities." Ill. Rev. Stat. 1985, ch. $111^2/_3$, ¶ 414 (now at 220 ILCS 30/14 (West 2016)).

¶ 27        In 1987, this court interpreted the interrelationship between the above-mentioned statutory provisions. *Central Illinois Light Co.*, 161 Ill. App. 3d at 365. In that case, CILCO had provided electricity to a tract of property before the effective date of the Electric Supplier Act. *Id.* In June 1986, the sole structure on the property was demolished and the property was subdivided. *Id.* In September 1986, the city of Springfield annexed the subdivided property and contracted to be the exclusive supplier of electricity for the newly created subdivision. *Id.* at 365-66. In October 1986, CILCO filed a complaint seeking declaratory and injunctive relief to prevent the city from providing electricity to the new subdivision. *Id.* at 365. CILCO argued that the Electric Supplier Act gave it the exclusive right to serve the subdivision. *Id.* (citing Ill. Rev. Stat. 1985, ch. 111$^2$/$_3$, ¶ 405(a) (now at 220 ILCS 30/5 (West 2016))). This court disagreed, concluding as follows:

> "[C]onsidering: (1) the city is not an 'electrical supplier'; (2) the [Electric Supplier] Act is not intended to affect the 'rights and powers' of the city (Ill. Rev. Stat. 1985, ch. 111$^2$/$_3$, [¶ 414); and (3) the city has the power to operate a plant and sell electricity to its inhabitants, we hold the [Electric Supplier] Act does not give CILCO any territorial rights which prohibit the city from furnishing services to the tract in question." *Central Illinois Light Co.*, 161 Ill. App. 3d at 367.

¶ 28        In 1996, the legislature amended the Illinois Municipal Code. Pub. Act 89-523, § 5 (eff. July 19, 1996) (amending 65 ILCS 5/11-117-6). The current version of the Illinois Municipal Code, as amended in 1996, provides that any municipality that owns or operates a municipal electric utility "shall have the *exclusive right* to provide electric service to all customers within its municipal limits and to customers at metered locations outside its municipal limits that it is serving on the effective date of this amendatory Act of 1996." (Emphasis added.)

65 ILCS 5/11-117-6(b) (West 2016). Notwithstanding this broad language, the remainder of this section limits the power of a municipality:

> "However, an investor-owned public utility providing electric service to customers at metered locations *** that are annexed by the municipality after the effective date of this amendatory Act of 1996 may continue to provide service to those residential customers *** and shall continue to provide service to those nonresidential customers at such metered locations within the municipal limits on the effective date of this amendatory Act of 1996." *Id.*

¶ 29                                    2. *This Case*

¶ 30        The city's annexation on its own does not affect Ameren's statutory right to service its residential and nonresidential customers.

¶ 31        First, the plain and unambiguous language of the Illinois Municipal Code provides that "an investor-owned public utility providing electric service to customers at metered locations *** that are annexed by the municipality after the effective date of this amendatory Act of 1996 *may continue* to provide service to those residential customers *** and *shall continue* to provide service to those nonresidential customers." (Emphases added.) *Id.* The parties agree that Ameren is an investor-owned public utility. Thus, this amended law limits the power of the city to provide electricity to Ameren's customers.

¶ 32        Second, the legislature partially abrogated this court's decision in *Central Illinois Light Co.* when it amended section 11-117-6 of the Illinois Municipal Code. Compare *Central Illinois Light Co.*, 161 Ill. App. 3d at 367 ("CILCO [does not have] any territorial rights which prohibit the city from furnishing [electrical] services to the tract in question."), with 65 ILCS 5/11-117-6(b) (West 2016) ( A "public utility providing electric service to customers at metered

locations *** that are annexed by the municipality after the effective date of this amendatory Act of 1996 may continue to provide service to those residential customers.").

¶ 33      Accordingly, Ameren has a statutory right to continue to serve its customers who were recently annexed. 65 ILCS 5/11-117-6(b) (West 2016). Thus, the trial court erred when it concluded that the city, based on section 11-117-6(b) of the Illinois Municipal Code and *Central Illinois Light Co.*, had the exclusive right to provide electricity to residents in recently annexed areas.

¶ 34      C. The City's Rights Under the Franchise Agreement

¶ 35      In October 1997, the city and Ameren entered into a franchise agreement. Section XVIII of the agreement states that the agreement "shall be and remain in full force and effect from and after its passage for a period of twenty (20) years thereafter." Section IX of this agreement provides as follows:

"This franchise is granted for the sole purpose of permitting [Ameren] to serve existing customers in the [c]ity who have opted to continue to receive service from [Ameren] after annexation, to serve customers of [Ameren] who annex to the [c]ity and which [Ameren] has a right to continue to serve and the customer has not requested service from the [c]ity, and to provide electric service to customers within [Ameren's] authorized service areas outside the corporate limits of the [c]ity or to make interconnections with the city or other electric systems. Unless approved by the [c]ity or other entity having authority to approve such action, [Ameren] shall not otherwise provide or furnish electric energy at retail within the present or future corporate limits of the city, or service territory

of the [c]ity, and nothing herein contained shall be construed as a grant or franchise to [Ameren] to conduct such business in the [c]ity."

¶ 36　　　　The city argues that even if Ameren has a statutory right to provide services to the newly annexed areas, the franchise agreement "unequivocally grants the [c]ity the right to serve annexed customers that request to be served by the [c]ity instead of Ameren." We disagree, concluding that because the franchise agreement expired in October 2017, it no longer has any legal effect.

¶ 37　　　　　　　　　　　　　　　　1. *The Applicable Law*

¶ 38　　　　A franchise agreement between a utility and a municipality is a contract. *City of Chicago v. Chicago Fiber Optic Corp.*, 287 Ill. App. 3d 566, 574, 678 N.E.2d 693, 699 (1997). The interpretation of a contract is a question of law reviewed *de novo. Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18, 45 N.E.3d 307. When construing the language of a contract, a court's primary objective is to give effect to the intent of the parties. *Regency Commercial Associates, LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 275, 869 N.E.2d 310, 316 (2007). Parties may contract away rights, even those of a constitutional or statutory nature. *Johannesen v. Eddins*, 2011 IL App (2d) 110108, ¶ 23, 963 N.E.2d 1061. When the words in a contract are clear and unambiguous, they must be given their plain and ordinary meaning. *Ritacca Laser Center v. Brydges*, 2018 IL App (2d) 160989, ¶ 15, 100 N.E.3d 569.

¶ 39　　　　In *Gaylor v. Village of Ringwood*, 363 Ill. App. 3d 543, 842 N.E.2d 1241 (2006), landowners entered into an annexation agreement with a village. The annexation agreement was entered into in 1997 and was "binding upon the parties *** for a full term of twenty (20) years." (Internal quotation marks omitted.) *Id.* at 544-45. The agreement was silent on whether the landowners could disconnect from the village. *Id.* at 545. In January 2003, landowners filed a

petition to disconnect their property from the village pursuant to the Illinois Municipal Code. *Id.* at 545-46 (citing 65 ILCS 5/7-3-6 (West 2004)). The village filed a counterclaim, seeking to enforce the 20-year agreement. *Id.* at 545. The trial court granted the landowners' petition, concluding that they had established their right to disconnection under section 7-3-6 of the Illinois Municipal Code. *Id.* The Second District reversed, reasoning as follows:

> "[The village] also argues that the existence of the annexation agreement affords it an affirmative defense to plaintiffs' petition for disconnection. In other words, the annexation agreement itself negates plaintiffs' entitlement to disconnection. We agree. *** It is fundamentally accepted that parties may contract away rights, even of constitutional dimension, as well as statutory rights. [Citation.] The existence of an annexation agreement implies that the parties contracted away their rights to sever the subject property from the annexing municipality for the life of the agreement." *Id.* at 549.

¶ 40                                    2. *This Case*

¶ 41        The franchise agreement states that it "is granted for the sole purpose of permitting [Ameren] *** to serve customers *** who annex to the City and which [Ameren] has a right to continue to serve and *the customer has not requested service from the City*." (Emphasis added.) The plain language of the franchise agreement, as Ameren concedes, limits its statutory right. See 65 ILCS 5/11-117-6(b) (West 2016). Furthermore, Ameren was free to contract away its statutory rights. *Village of Ringwood*, 363 Ill. App. 3d at 549.

¶ 42        This is not a case in which a utility enters into a franchise agreement and then the law is changed. Instead, the franchise agreement between the city and Ameren, which was enacted in October 1997, was agreed upon *after* the Illinois Municipal Code was amended in

1996. Pub. Act 89-523, § 5 (eff. July 19, 1996) (amending 65 ILCS 5/11-117-6). Accordingly, the existence of the franchise agreement demonstrates that Ameren contracted away some of its statutory rights under the Illinois Municipal Code. See *Village of Ringwood*, 363 Ill. App. 3d at 549.

¶ 43 Nonetheless, section XVIII of the franchise provides that the agreement "shall be and remain in full force and effect from and \*\*\* after its passage for a period of twenty (20) years thereafter." The agreement was entered into in October 1997. Thus, by its very terms, the agreement expired in October 2017, almost one year ago. The city does not argue—nor does the record show—that the franchise agreement was renewed or that the city and Ameren entered into a new franchise agreement. Instead, in its brief to this court, the city explicitly relies upon the October 1997 franchise agreement. We conclude that the October 1997 agreement no longer has any legal effect.

¶ 44 Put another way, if the agreement between the city and Ameren had been renewed or a similar agreement had been agreed upon, then the city would have a contractual right to service the newly annexed areas. See *id.* However, because nothing in the record before us shows that an agreement currently exists, Ameren's statutory right applies. 65 ILCS 5/11-117-6(b) (West 2016).

¶ 45 D. Ameren's Alternative Arguments

¶ 46 Because we agree with Ameren that the trial court erred by granting summary judgment to the city, we need not address Ameren's other augments in support of its contention.

¶ 47 III. CONCLUSION

¶ 48 For the reasons stated, we reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

¶ 49        Reversed and remanded.