NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 4241477-U

NO. 4-24-1477

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 20, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JOHN KEAGY and DWAYNE KEAGY, as | ) | Appeal from the |
| Co-Trustees of the Norma Keagy Revocable Trust | ) | Circuit Court of |
| Dated August 16, 1996; RONALD SCHAEFER; and | ) | Macoupin County |
| DEAN TETZLAFF and MARGARET TETZLAFF, | ) | No. 21CH7 |
|     Plaintiffs | ) | |
| (Ronald Schaefer and Dean Tetzlaff and Margaret | ) | |
| Tetzlaff, Plaintiffs-Appellants) | ) | |
|     v. | ) | Honorable |
| NEW RIVER ROYALTY, LLC, | ) | Gail L. Noll, |
|     Defendant-Appellee. | ) | Judge Presiding. |

---

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court properly dismissed plaintiffs' second amended complaint; the allegations failed to state a claim plaintiffs were improperly denied their contractual rights to repurchase land under option agreements.

¶ 2    Plaintiffs, Ronald Schaefer and Dean and Margaret Tetzlaff, appeal the section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)) dismissal of their specific-performance and breach-of-contract claims against defendant, New River Royalty, LLC. Plaintiffs contend the allegations in the second amended complaint show they have a contractual right to repurchase property once used for coal-mining operations and, in the alternative, an ambiguity in the contractual language bars dismissal. We affirm.

¶ 3                      I. BACKGROUND

¶ 4    There are 20 counts in the second amended complaint. Because of dismissals of

the other counts, only counts 11, 12, 19, and 20 of the second amended complaint are at issue in this appeal. Counts 11 and 12 are specific-performance and breach-of-contract claims by Ronald against defendant; counts 19 and 20 raise similar claims by the Tetzlaffs, who are married, against defendant.

¶ 5        According to the allegations in the second amended complaint, in November 1990, William J. and Mary M. Schaefer entered a purchase option (Schaefer contract) with ExxonMobil Coal USA (Exxon) for property in Macoupin County, Illinois (Schaefer property). Ronald is William's and Mary's successor-in-interest. Under the Schaefer contract, Exxon acquired the option to purchase the Schaefer property. If Exxon exercised that option, section 13 of the Schaefer contract gave William and Mary the right to repurchase the property "after mining affecting the Property and any reclamation operations had been completed." In November 1996, Exxon exercised its right to purchase the Schaefer property. Since that time, the Schaefer property was sold three times. In July 2009, Exxon deeded the Schaefer property to Macoupin Energy. In August 2010, Macoupin Energy deeded the property to Colt, LLC, which in turn deeded the property on the same day to defendant. No notice of these sales was given to Ronald. All reclamation activities on the Schaefer property concluded on September 26, 2013. In November 2020, Ronald sent a letter to defendant providing his notice of his election to repurchase the Schaefer property. The complaint alleges the Schaefer contract "created a valid and enforceable right in Ronald Schaefer to exercise the option to repurchase the Property prior to its sale to another."

¶ 6        Attached to the second amended complaint is the Schaefer contract. Section 13(a) sets forth the prerequisites for the right to repurchase the Schaefer property:

"In the event Exxon exercises this Option and purchases

the Premises, Exxon gives and grants unto [the Schaefers] the exclusive right and option to repurchase the Premises, as is without any representations, guarantees or warranties whatsoever, for the then value, upon the following terms and conditions:

(a) The option to repurchase shall be applicable only if Exxon determines, in its sole discretion, to sell the Premises within two years after all mining affecting the Premises and any reclamation operations as then required by law are completed. This option to repurchase shall be personal to Repurchaser and shall not be assignable, unless the prior written consent of Exxon has been obtained."

Section 18 of the Schaefer contract gives Exxon the right "to assign this Option, and all of its rights hereunder, to any person or corporation, subject to all of the terms of this Option." Defendant is a successor to Exxon on the option contracts.

¶ 7        Regarding the Tetzlaffs, the second amended complaint alleges the Tetzlaffs entered a purchase option with Exxon in September 2005 (Tetzlaff contract). Under the Tetzlaff contract, Exxon was granted the option to purchase property in Macoupin County (Tetzlaff property). Attached to the second amended complaint is "[a] true, accurate and correct copy of the unsigned Tetzlaffs Contract." The Tetzlaff contract contains the same language regarding the repurchase option that appears in the Schaefer contract. Attached to the complaint is a September 12, 2005, notice of option to purchase real estate recorded with Macoupin County. After Exxon purchased the property, the Tetzlaff property was deeded three times, like the Schaefer property. Defendant is the current owner of the Tetzlaff property. Section 14 of the Tetzlaff contract gave

- 3 -

Exxon the right to assign the option to another, "subject to all of the terms of this Option."

¶ 8        Defendant responded by moving to dismiss the claims by Ronald and the Tetzlaffs under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2022)). Relevant to this appeal is defendant's section 2-615 argument, in which defendant alleges plaintiffs' second amended complaint fails to state a claim, as there is no allegation defendant determined to sell the property within the time period set forth in subsection 13(a).

¶ 9        Plaintiffs countered by alleging, under subsection 13(a), their right to repurchase was triggered when two events occurred: (1) the sale of the properties and (2) the completion of reclamation operations.

¶ 10       Finding no ambiguity in subsection 13(a) and agreeing with defendant's interpretation of that subsection, the trial court granted the motion to dismiss with prejudice, resulting in the dismissal of all claims. On October 24, 2024, by agreement of the parties, the court dismissed the last two counts remaining in this matter against defendant.

¶ 11       This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13       The parties agree their dispute turns on the interpretation of subsection 13(a) of the Schaefer and Tetzlaff contracts.

¶ 14       Plaintiffs maintain the language in subsection 13(a) shows the completion of two events trigger their right to repurchase the property: (1) when "the Optionee determines, in its sole discretion to sell the Premises after mining affecting the premises" and (2) "any reclamation operations as required by law are completed." Plaintiffs argue the properties were sold three times, satisfying the first trigger. Plaintiffs then contend reclamation activities concluded on September 26, 2013, the second triggering event. Plaintiffs dispute defendant's interpretation,

contending it removes the term "and" and asks the court to rewrite the contracts.

¶ 15        Defendant contends subsection 13(a) states the option to repurchase is triggered only if the optionee decided to sell the premises within two years after "both" the mining of the property and any reclamation operations are completed. Defendant maintains there is no allegation it made the determination to sell the properties within two years after September 26, 2013, when mining operations and reclamation efforts were completed.

¶ 16        Plaintiffs' second amended complaint was dismissed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)). A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint. *Grant v. State*, 2018 IL App (4th) 170920, ¶ 12. When a section 2-615 motion to dismiss is filed, the movant argues the facts pleaded by the plaintiff do not state a cause of action. *Id.* When deciding whether to grant such a motion, the court accepts as true all well-pleaded facts in the complaint and any reasonable inferences arising from those alleged facts. *Id.* Only when it is clearly apparent from the pleadings no set of facts can be proved entitling the plaintiff to recovery should a court dismiss a complaint under section 2-615. *Id.* Our review of an order granting a section 2-615 motion to dismiss is *de novo*. *Id.*

¶ 17        The claims dismissed in this case under section 2-615 are founded on the allegation defendant breached the contract, specifically, the option to repurchase. A breach of contract requires proof of a valid and enforceable contract, the plaintiff's performance of the contract, the defendant's breach of that contract, and a resulting injury. *Barry v. St. Mary's Hospital Decatur*, 2016 IL App (4th) 150961, ¶ 78. To breach a contract is to violate " 'a contractual obligation, either by failing to perform one's own promise or by interfering with another party's promise.' " *Chapman v. Engel*, 372 Ill. App. 3d 84, 88 (2007) (quoting Black's Law Dictionary 182 (7th ed. 1999)). To obtain the equitable remedy of specific performance

"requiring a defendant to perform an affirmative act in order to fulfill a contract" requires proof the defendant "failed or refused to perform his part of the contract." *Dixon v. City of Monticello*, 223 Ill. App. 3d 549, 560-61 (1991).

¶ 18 While the parties agree the question of whether defendant breached the contract turns on the interpretation of subsection 13(a), their briefs quote subsection 13(a) differently. Plaintiffs' statement of facts, as well as the agreed statement of facts, quotes the language of 13(a) from the Schaefer and Tetzlaff contracts. In its appellee brief, defendant quotes the following, which does not specify Exxon and does not include the two-year limitation: "The option to repurchase shall be applicable only if Optionee determines, in its sole discretion, to sell the Premises after mining affecting the Premises and any reclamation operations as then required by law are completed." (Emphasis omitted.) This quoted language appears in the contract between the Norma Keagy Revocable Trust and Exxon, which is not part of this appeal.

¶ 19 Because only plaintiffs Ronald and Tetzlaffs remain and assert claims based on their contracts with Exxon, the language from subsection 13(a) of the Schaefer and Tetzlaff contracts controls. We thus will interpret the relevant sentence from that subsection. It provides the following:

> "The option to repurchase shall be applicable only if Exxon determines, in its sole discretion, to sell the Premises within two years after all mining affecting the Premises and any reclamation operations as then required by law are completed."

¶ 20 Our primary objective in interpreting subsection 13(a) is "to give effect to the intent of the parties." *City of Springfield v. Ameren Illinois Co.*, 2018 IL App (4th) 170755, ¶ 38. To determine that intent, we begin with the language of subsection 13(a). See *Clanton v.*

*Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 30. Unless the words in a subsection are unclear and ambiguous, we will give those words their plain and ordinary meaning. See *City of Springfield*, 2018 IL App (4th) 170755, ¶ 38. Our review is *de novo*. *Id.* ("The interpretation of a contract is a question of law reviewed *de novo*.").

¶ 21     The language of subsection 13(a) is unambiguous. The plain language of subsection 13(a) reveals defendant, as a successor to Exxon, had the sole discretion to decide whether to sell the property. Subsection 13(a) limits that decision to the two-year period "after all mining affecting the Premises and any reclamation operations as then required by law are completed." The clause "after all mining affecting the Premises and any reclamation operations as then required by law are completed" modifies "two years," clarifying which two-year period the parties intended at the time the contracts were entered. As there is no allegation showing defendant determined to sell in the specified two-year period, plaintiffs have failed to state a claim defendant breached the Schaefer or Tetzlaff contracts and plaintiffs have not shown they are entitled to specific performance.

¶ 22     Plaintiffs' interpretation of subsection 13(a) is not reasonable. Plaintiffs contend the language of subsection 13(a) requires two separate events: "sale of the subject property" and "completion of reclamation activities." Plaintiffs' interpretation ignores the contract's inclusion of the words "two years." In addition, to accept plaintiffs' interpretation would leave the first part of subsection 13(a) seemingly unfinished: "The option to repurchase shall be applicable only if Exxon determines, in its sole discretion, to sell the Premises within two years after all mining affecting the Premises." Moreover, there is no comma after "Premises" to support the conclusion two separate independent clauses for two separate events were joined together. See *In re Syngenta Litigation*, 2023 IL App (5th) 200353-U, ¶ 37 ("A comma is a punctuation mark ***

joining two or more independent clauses together."). The absence of a comma before "and" supports the conclusion the "and" does not link independent clauses but joins the incomplete phrases of "all mining affecting the Premises" and "any reclamation operations as then required by law" to the verb "are completed."

¶ 23       As the second amended complaint includes no allegation defendant decided to sell the property "within two years after" the completion of mining and reclamation, plaintiffs have failed to state a claim for breach of contract and specific performance.

¶ 24                                III. CONCLUSION

¶ 25       We affirm the trial court's judgment.

¶ 26       Affirmed.