NOTICE
Decision filed 06/14/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200353-U

NO. 5-20-0353

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* SYNGENTA LITIGATION | ) | Appeal from the |
| | ) | Circuit Court of |
| (Benny Browning, | ) | Williamson County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Syngenta Seeds, LLC, f/k/a Syngenta Seeds, Inc.; | ) | |
| Syngenta AG; Syngenta Crop Protection AG; | ) | |
| Syngenta Corporation; Syngenta Crop Protection, | ) | |
| LLC; Syngenta Biotechnology, Inc.; | ) | |
| Biotechnology, Inc.; Gavilon Grain, LLC; | ) | |
| Archer Daniels Midland Company; Bunge | ) | |
| Company; Bunge North America, Inc.; Cargill, | ) | Master Case No. 15-L-157 |
| Incorporated; Cargill International SA; | ) | |
| Louis Dreyfus Company, LLC, f/k/a Louis | ) | |
| Dreyfus Commodities, LLC; Louis Dreyfus | ) | |
| Company Grains Merchandising, LLC; | ) | |
| and Louis Dreyfus Company B.V., f/k/a | ) | |
| Louis Dreyfus Commodities B.V., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Gavilon Grain, LLC; Archer Daniels Midland | ) | |
| Company; Bunge North America, Inc.; Cargill | ) | |
| Incorporated; Cargill International SA; Louis | ) | |
| Dreyfus Company, LLC, f/k/a Louis Dreyfus | ) | |
| Commodities, LLC; Louis Dreyfus Company | ) | |
| Grains Merchandising, LLC; and Louis Dreyfus | ) | Honorable |
| Company B.V., f/k/a Louis Dreyfus Commodities | ) | Jeffrey A. Goffinet, |
| B.V., Defendants-Appellees)). | ) | Judge, presiding. |

1

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the judgment of the circuit court finding that the plaintiffs' negligence claims fail, regardless of the negligence theories under which the claims have been alleged, and that any further amendment to the plaintiffs' consolidated master complaint would be futile.

¶ 2    This is an interlocutory appeal that stems from hundreds of Illinois state court actions, which were consolidated before the circuit court of Williamson County for the purpose of pretrial proceedings. The core litigation in this matter has been addressed by multiple state and federal courts. Simply stated, the plaintiffs[1] alleged that China's rejection, and subsequent ban in February 2014, on the importation of corn grown in the United States was a result of Syngenta's[2] contamination of corn grown in the United States with genetically modified Agrisure® Viptera™ and Agrisure® Duracade™ (Viptera/Duracade) brand corn seed. The plaintiffs, who never knowingly planted or grew Viptera/Duracade corn, further allege that the defendants,[3] who are commodity

_____

[1]Benny Browing is the plaintiff in the master complaint, which relates to all the cases consolidated in this matter. There are over 500 consolidated cases, with the majority of the cases being brought by numerous plaintiffs (*e.g.*, 87 named plaintiffs in Swinson v. Syngenta AG, No. 16-L-166 (Cir. Ct. Williamson County)). As such, we will refer to "plaintiffs" throughout this decision.

[2]"Syngenta" collectively refers to defendants Syngenta Seeds, LLC f/k/a Syngenta Seeds, Inc.; Syngenta AG; Syngenta Crop Protection AG; Syngenta Corporation; Syngenta Crop Protection, LLC; and Syngenta Biotechnology, Inc.

[3]Archer Daniels Midland Company (ADM); Bunge North America, Inc. (Bunge); Cargill, Incorporated and Cargill International SA (collectively, Cargill); Louis Dreyfus Company, LLC f/k/a Louis Dreyfus Commodities, LLC, Louis Dreyfus Company Grains Merchandising, LLC, Louis Dreyfus Company B.V. f/k/a Louis Dreyfus Commodities B.V. (collectively, Dreyfus); and Gavilon Grain, LLC (Gavilon). ADM,

management and export companies, improperly handled, sold, and shipped Viptera/Duracade corn and corn by-products, which were not approved for food or feed use in major United States export markets, including China.

¶ 3    On August 18, 2017, the circuit court granted the ABCDG defendants' motions to dismiss the plaintiffs' fourth amended consolidated complaint with prejudice. The circuit court also denied the plaintiffs' emergency motion for leave to add an additional count to the plaintiffs' fourth amended consolidated complaint against the defendants ADM, Cargill, and Gavilon.

¶ 4    On August 31, 2020, the circuit court entered final judgments regarding the ABCDG defendants, applying its orders of August 18, 2017, to all later-filed complaints. The circuit court also entered a finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), stating that there was no just reason for delaying the appeal of the final judgments regarding the ABCDG defendants, although there remained certain unserved defendants. Thereafter, the plaintiffs appealed. For the following reasons, we affirm the judgment of the circuit court of Williamson County.

¶ 5                             I. BACKGROUND

¶ 6    In 2015, hundreds of identical, or nearly identical, lawsuits were filed by the plaintiffs in the circuit court of Williamson County and in other Illinois state courts. On January 7, 2016, the Illinois Supreme Court, pursuant to Illinois Supreme Court Rule 384

---

Bunge, Cargill, and Dreyfus are collectively referred to as the "ABCD defendants." ABCD defendants and Gavilon are collectively referred to as the "ABCDG defendants."

(eff. Nov. 1, 1990), consolidated all related cases statewide before the circuit court of Williamson County for coordinated pretrial proceedings.

¶ 7 On February 11, 2016, the plaintiffs filed a consolidated complaint. The plaintiffs then filed an amended consolidated complaint on March 8, 2016; a second amended consolidated complaint on March 24, 2016; a third amended consolidated complaint on June 2, 2016; and a fourth amended consolidated complaint on January 5, 2017. The ABCD defendants and Gavilon filed separate motions to dismiss the plaintiffs' fourth amended consolidated complaint on March 17, 2017. Thereafter, the plaintiffs filed an emergency motion for leave to add an additional count to plaintiffs' fourth amended consolidated complaint against the defendants ADM, Cargill, and Gavilon on May 16, 2017.

¶ 8 On August 18, 2017, the circuit court granted the ABCDG defendants' motions to dismiss, in separate orders, and denied the plaintiffs' emergency motion for leave to add an additional count against the defendants ADM, Cargill, and Gavilon. In its order granting Gavilon's motion to dismiss, the circuit court adopted its reasoning and basis stated in its order granting the ABCD defendants' motion to dismiss, and additionally, set forth its reasoning and basis for dismissing count 4 of the plaintiffs' fourth amended consolidated complaint, which was a vicarious liability claim directed solely against Gavilon. In the interest of brevity, given the length of the circuit court's orders, this court will set forth the relevant circuit court's findings and reasoning in our analysis below.

¶ 9 On September 1, 2017, the plaintiffs moved for an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding, regarding the circuit court's dismissal of the ABCDG defendants. The circuit court denied the plaintiffs' request for a Rule 304(a) finding, based

4

on the factual and legal overlap between the plaintiffs' pending and dismissed claims, on October 6, 2017.

¶ 10　On August 31, 2020, the circuit court dismissed, with prejudice and on the merits, all later-filed complaints filed against the ABCDG defendants and entered a final judgment regarding the ABCDG defendants. In its final judgment, the circuit court also made a Rule 304(a) finding that there was no just reason for delaying the appeal of the final judgment with regard to the ABCDG defendants, although certain defendants remained unserved. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Thereafter, the plaintiffs filed a notice of appeal challenging the judgment of the circuit court.

¶ 11　II. ANALYSIS

¶ 12　On appeal, the plaintiffs list four issues for this court's review. Those issues are as follows:

> "1. Were Plaintiffs' negligence claims preempted by the Grain Standards Act when the language of that statute itself only applies to state-imposed restrictions upon the performance of official inspections by official inspection personnel.
>
> 2. Did the ABCDG Defendants owe Plaintiffs a duty of ordinary care to guard against injuries resulting as a reasonably probable and foreseeable consequence of their conduct.
>
> 3. Did the Circuit Court err in dismissing Plaintiffs' acting in concert claims when the well-pled facts allege that the ABCDG Defendants provided substantial assistance to Syngenta and acted pursuant to a common design as

5

to each other which led to the closure of the Chinese market and injury to Plaintiffs.

4. Did the Circuit Court err in concluding that amendments to Plaintiffs' complaint would be futile because Plaintiffs could not state negligence claims against ADM, Cargill, and Gavilon based on their sale of corn seed because such claims would be preempted, or did not state a duty or proximate cause."

¶ 13    Prior to proceeding with our analysis of the above issues, we note that the defendant, Gavilon, states in its brief,[4] that the plaintiffs have asserted that their appeal was timely filed based on Illinois Supreme Court Order M.R. 30370 (eff. Mar. 24, 2020). Gavilon further notes that Illinois Supreme Court Order M.R. 30370 (eff. Aug. 28, 2020) vacated the provisions of M.R. 30370 (eff. Mar. 24, 2020), effective September 1, 2020. Gavilon takes no position as to the impact of these orders, or the timeliness of the plaintiffs' appeal, but states that it is not aware of any authority interpreting M.R. 30370 (eff. Aug. 28, 2020).

¶ 14    This court has an independent duty to ascertain its jurisdiction, regardless of whether a party has raised, or has taken a position regarding the timeliness of an appeal, before proceeding to hear an appeal. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67. The filing of a timely notice of appeal is both mandatory and jurisdictional. *Vines v. Village of Flossmoor*, 2017 IL App (1st) 163339, ¶ 9. If our

---

[4]The ABDC defendants and the defendant, Gavilon, each filed an appellee brief in response to the plaintiffs' appeal. We will refer to the appellees' briefs, and the arguments contained therein, collectively as the "defendants' briefs" and/or "defendants' arguments," unless, as here, the argument is only contained in one of the briefs, or only pertains to one of the ABCDG defendants.

6

jurisdiction is lacking, we must dismiss the appeal. *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 542 (2011). Whether this court has jurisdiction is a question of law that we review *de novo*. *Mayle v. Urban Realty Works, LLC*, 2020 IL App (1st) 191018, ¶ 36. This court also reviews *de novo* when the interpretation of a supreme court order is required. *Longstreet v. Cottrell, Inc.*, 374 Ill. App. 3d 549, 551-52 (2007).

¶ 15    Although an order issued by the Illinois Supreme Court is not a statute enacted by the Illinois legislature, the interpretation of a supreme court order should follow the same guideline as statutory interpretation. See *id.* at 552.; *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998). As such, our goal is to interpret the rule by ascertaining and giving effect to the drafter's intentions, and the words utilized by the supreme court should be given their plain, ordinary, and popularly understood meaning. *Longstreet*, 374 Ill. App. 3d at 552; *Rennick*, 181 Ill. 2d at 404-05.

¶ 16    In an interlocutory appeal pursuant to Rule 304(a), to confer jurisdiction on this court, a notice of appeal must normally be filed within 30 days after the entry of the judgment containing the required Rule 304 findings from which the appeal is taken. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); R. 304 (eff. Mar. 8, 2016). If a timely postjudgment motion is filed, however, the time for filing a notice of appeal is tolled and the appealing party must then file a notice of appeal "within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); see also Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988). No postjudgment motion was filed in this matter and, as such, the plaintiffs' notice of appeal would normally have been required to be filed within 30 days after the

7

entry of the circuit court's judgment containing the required Rule 304 findings from which the appeal is taken.

¶ 17 Our supreme court, however, issued Illinois Supreme Court Order M.R. 30370, which stated as follows:

"In light of the ongoing public health concerns relating to COVID-19, the deadlines to file the following documents concerning appeals before the Appellate Court are temporarily extended as follows:

1. The deadline to file a notice of appeal in the circuit court due on or after the date of this order is extended from 30 days to 60 days from the date of the circuit court judgment." Ill. S. Ct., M.R. 30370 (eff. Mar. 24, 2020).

¶ 18 The date of the circuit court's Rule 304(a) finding in this matter was August 31, 2020, and the 30-day deadline would have been September 30, 2020, making the deadline to file a notice of appeal "due on or after" the date of M.R. 30370 (eff. Mar. 24, 2020). Therefore, M.R. 30370 (eff. Mar. 24, 2020) extended the plaintiffs' deadline to file a notice of appeal in the circuit court from September 30, 2020, to on or before October 30, 2020.

¶ 19 On August 28, 2020, our supreme court issued M.R. 30370 (eff. Aug. 28, 2020), which stated that "the order of March 24, 2020, providing for the temporary extension of deadlines to file a notice of appeal" was vacated effective September 1, 2020. *Id.* M.R. 30370 (eff. Aug. 28, 2020) further provided that "[a]ny deadline set *** in accordance with the above referenced orders prior to the effective date of this Order shall remain in effect." *Id.*

¶ 20 Gavilon states that it is not aware of any authority interpreting M.R. 30370 (eff. Aug. 28, 2020), and this court could not locate any precedent regarding that portion of M.R. 30370 (eff. Aug. 28, 2020) related to the termination of the extension deadline for filing an appeal. We believe, however, that the lack of precedent is due to the language of M.R. 30370 (eff. Aug. 28, 2020) being clear and unambiguous. M.R. 30370 (eff. Aug. 28, 2020) clearly vacated M.R. 30370 (eff. Mar. 24, 2020), effective as of September 1, 2020. On or after September 1, 2020, the deadline for filing a notice of appeal in the circuit court returned to 30 days from the date of the circuit court's judgment, but any previous deadlines set in accordance with M.R. 30370 (eff. Mar. 24, 2020) remained in effect. We find nothing in the language of M.R. 30370 (eff. Aug. 28, 2020) to indicate any other interpretation.

¶ 21 Therefore, although M.R. 30370 (eff. Aug. 28, 2020) was issued three days prior to the judgment appealed in this matter, it was not effective until the day after the judgment appealed. As such, the 60-day deadline set by M.R. 30370 (eff. Mar. 24, 2020) on the date of the judgment for the filing of the plaintiffs' notice of appeal remained in effect by the provision of M.R. 30370 (eff. Aug. 28, 2020). Based on M.R. 30370 (eff. Mar. 24, 2020) and M.R. 30370 (eff. Aug. 28, 2020), we find that the plaintiffs' notice of appeal, filed on October 27, 2020, was timely. As such, this court has jurisdiction to consider the plaintiffs' appeal, and we now move on to our analysis.

¶ 22                                  A. Standard of Review

¶ 23 This appeal arises from the circuit court's granting of the ABCDG defendants' motions pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2016)). A motion to dismiss under section 2-615 attacks the legal

9

sufficiency of a complaint and does not raise any affirmative factual defense. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). A section 2-615 motion to dismiss presents the question of whether the complaint's allegations, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Randall v. Lemke*, 311 Ill. App. 3d 848, 850 (2000). A claim may not be dismissed under section 2-615 unless no set of facts may be proved that would entitle the plaintiff to recover. *Id*. As such, the only matters to be considered in ruling on a section 2-615 motion are the allegations of the pleadings themselves. *Illinois Graphics Co*., 159 Ill. 2d at 485.

¶ 24    A motion to dismiss pursuant to section 2-619, in comparison, allows for an involuntary dismissal of a claim based on certain defects or defenses. *Id*. A motion under section 2-619 "admits the legal sufficiency of the complaint and raises defects, defenses or other affirmative matter which appears on the face of the complaint or is established by external submissions which act to defeat the plaintiff's claim." *Neppl v. Murphy*, 316 Ill. App. 3d 581, 584 (2000). A section 2-619 proceeding enables the court to dismiss the complaint after considering issues of law or easily proved issues of fact. *Id.* at 585. As such, affirmative defenses may be raised in a 2-619 motion, but may not be raised in a section 2-615 motion. *Becker v. Zellner*, 292 Ill. App. 3d 116, 122 (1997).

¶ 25    With regard to either a section 2-615 or a section 2-619 motion, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from them. *Id*. Finally, an appeal from either a section 2-615 or 2-619 dismissal is subject to *de novo* review. *Id*. A *de novo* review means that this court performs the same analysis as that of

the lower court, and our disposition is without regard to the circuit court's reasoning. *Ragel v. Scott*, 2018 IL App (4th) 170322, ¶ 19.

¶ 26 Finally, regarding a circuit court's ruling on a motion for leave to amend, we review for an abuse of discretion. *Weidner v. Midcon Corp.*, 328 Ill. App. 3d 1056, 1059 (2002). Under an abuse of discretion standard, the question is not whether this court agrees with the circuit court's action, "but whether the [circuit] court acted arbitrarily, without employing conscientious judgment, or whether, considering all the circumstances, the [circuit] court acted unreasonably and ignored recognized principles of law, which resulted in substantial prejudice." *Petryshyn v. Slotky*, 387 Ill. App. 3d 1112, 1116 (2008).

¶ 27                         B. United States Grain Standards Act

¶ 28 The first issue presented for this court's review is whether the circuit court erred in dismissing plaintiffs' negligence claims[5] based on its determination that the claims were preempted by the United States Grain Standards Act (GSA) (7 U.S.C. § 71 *et seq.* (1968)). Specifically, the circuit court found as follows:

> "Plaintiffs' negligence claims against the [ABCDG defendants] are expressly preempted by the U.S. Grain Standards Act ('GSA'), 7 U.S.C. §§ 71-87k. For the reasons stated by Judge John W. Lungstrum (United States District Court, District of Kansas) and Judge David R. Herndon (United States District Court, Southern District of Illinois) in opinions dismissing similar claims against the [ABCDG defendants], and for the

---

[5]Count 6 of the plaintiffs' fourth amended consolidated complaint alleges in-concert liability—negligence claims against the ABCDG defendants.

11

reasons articulated in the [ABCDG defendants'] supporting memoranda of law, Plaintiffs' negligence claims against the [ABCDG defendants] would impose a federally preempted state-law duty to inspect or describe corn for the presence of certain genetic traits as a condition of shipment, or sale, of such corn in interstate or foreign commerce, and therefore those claims fail as a matter of law. *See In re Syngenta* AG MIR 162 Corn Litig., MDL No. 2591, 2016 WL 1312519 (D. Kan. Apr. 4, 2016) ('MDL Preemption Order I'); *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, 2016 WL 4382772 (D. Kan. Aug. 17, 2016) ('MDL Preemption Order II'); *Tweet v. Syngenta AG*, No. 3:16-CV-00255-DRH, 2017 WL 54345 (S.D. Ill. Jan. 4, 2017) ('*Tweet* Dismissal Order'); *see also State Bank of Cherry v. CGB Enters.*, 2013 IL 113836, ¶ 35."

¶ 29    The plaintiffs argue that their claims are not, in any way, preempted by the GSA. The plaintiffs assert that the GSA applies only to state-imposed restrictions upon the performance of any "official inspection" or weighing function by "official inspection personnel." Since none of the plaintiffs' claims constitute state-imposed restrictions upon the performance of any "official inspection" or weighing function by "official inspection personnel," the plaintiffs argue that their claims are not preempted by the GSA.

¶ 30    The plaintiffs further state that, once the federal District Court of Kansas had determined that such claims were preempted by the GSA, both the federal District Court of Southern Illinois and the circuit court "blindly adopted and followed the decision without meaningful further analysis." As such, the plaintiffs note that this court is not

12

bound by the decision of a lower federal court, and urges this court not to defer to such a decision merely because it was issued by a federal court that construed a federal statute.

¶ 31　The defendants state that the plaintiffs' textual argument, regarding "official inspection" or weighing function by "official inspection personnel," was never presented to the circuit court, nor argued in the two federal courts that have addressed this issue. As such, the defendants argue that the plaintiffs have forfeited this argument on appeal. This court, however, declines to address whether the plaintiffs have forfeited this issue[6] on appeal, since forfeiture is a limitation on the parties and not the court. *People v. Sophanavong*, 2020 IL 124337, ¶ 21. This court may overlook general forfeiture principles in a civil case, and consider an issue not raised in the lower court, if the issue is one of law, is fully briefed and argued by the parties, and the public interest favors consideration of the issue. *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 28.

¶ 32　Here, the issue is one of statutory construction which is a question of law (*Board of Education of the City of Chicago v. Moore*, 2021 IL 125785, ¶ 18), the issue has been fully briefed and argued by the parties, and given the extensive nature of this litigation, we find that public interest favors our consideration of the issue. We further find that public interest favors our consideration of this issue in an attempt to achieve finality of this litigation. As

---

[6]The plaintiffs list their textual assertion regarding the GSA as the first issue in their issues presented for review section of their opening brief. In the plaintiffs' points and authorities section of their opening brief, along with their argument section, however, the textual assertion is listed as an argument under the issue of whether the circuit court erred in dismissing their negligence claims. In their reply brief, in addressing the defendants' forfeiture argument, the plaintiffs state that it is an argument, and not an issue. This court will not indulge in whether it is an issue or argument, but we will refer to it as an issue since it was presented as an issue for this court's review in the plaintiffs' opening brief.

such, we will consider the plaintiffs' claim that the GSA express preemption provision applies only to state-imposed restrictions upon the performance of "official inspections" or weighing function by "official inspection personnel."

¶ 33    An issue of statutory construction is reviewed *de novo. Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent. *Id.* "The language of the statute is the best indication of legislative intent, and our inquiry appropriately begins with the words used by the legislature." *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007).

¶ 34    All provisions of a statute should be viewed as a whole. *Id.* at 514. Accordingly, all words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *Sandholm*, 2012 IL 111443, ¶ 41. Statutes are to be construed so that no word, clause, or sentence is rendered meaningless or superfluous. *Brucker*, 227 Ill. 2d at 514. Where the statutory language is clear and unambiguous, it must be applied as written without resort to extrinsic aids of statutory construction. *Id.* at 513. However, where a statute is susceptible to more than one equally reasonable interpretation, then the statute is ambiguous, and the court may consider extrinsic aids of construction to discern the legislative intent. *Id.* at 514.

¶ 35    Since this matter involves a federal statute, we look to the decisions of the United States Supreme Court and federal circuit and district courts. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141 (2006). United States Supreme Court interpretations of a federal law are binding on this court; however, in the absence of such precedent, the weight this court gives to federal circuit and district courts' interpretations depends upon factors such

as uniformity of law and the soundness of the decisions. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 33. If the lower federal courts are uniform on their interpretation of a federal statute, although not binding on this court as the plaintiffs have noted, in the interest of preserving unity, this court will give considerable weight to those courts' interpretations and find them to be highly persuasive. *Id.* ¶ 35. The parties have not cited, nor can we locate, any Supreme Court precedent with regard to this issue, and note that the two lower federal courts that have examined this issue were uniform in their interpretation of the GSA exemption provision.

¶ 36     The express preemption provision of the GSA states as follows:

> "No State or subdivision thereof may require the inspection or description in accordance with any standards of kind, class, quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce, or require any license for, or impose any other restrictions upon the performance of any official inspection or weighing function under this chapter by official inspection personnel." 7 U.S.C. § 87g(a) (1968).

¶ 37     We begin by looking at the language of the statute. The word "or" is contained in the statute eight times. The word "or" is a conjunction that connects two or more possibilities or alternatives, and is also used to show that a word or phrase means the same as, explains, or corrects another word or phrase.[7] We also note that there are seven commas

---

[7]https://www.dictionary.combridge.org/dictionary/english/or (last visited May 15, 2023).

within the statute. A comma is a punctuation mark that is used in numerous ways, to include separating a list or series, joining two or more independent clauses together, or following an introductory word or phrase.[8] The parties present arguments under different canons of statutory construction regarding the legislature's use of the word "or," and the placement of commas, within the statute. Given the various functions of the use of the word "or," and numerous placements of commas in this statute, we find that the statute is susceptible to more than one equally reasonable interpretation. As such, we find that the statute is ambiguous, and this court may consider extrinsic aids of construction to discern the legislative intent.

¶ 38   Under the series-qualifier canon of statutory construction,[9] the plaintiffs argue that the terms "official inspection" and "official inspection personnel" qualify and limit the scope of the entire provision. According to the plaintiffs' argument, the legislature could have placed a period after the words "foreign commerce," and having not done so, the provision must be read as a whole. As such, the plaintiffs argue that the statute makes clear that the first two provisions regarding inspection/description and licensing relates only to the performance of any "official inspection" or weighing function by "official inspection personnel." Thus, the plaintiffs argue that the statute should be read as follows:

---

[8]https://www.thesaurus.com/e/grammer/comma (last visited May 15, 2023).

[9]"Under conventional rules of grammar, '[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.' " *Facebook, Inc. v. Duguid*, 592 U.S. ___, ___, 141 S. Ct. 1163, 1169 (2021). This interpretative rule is usually referred to as the "series-qualifier canon." *Id*.

"[T]hat 'states cannot (1) require official inspection personnel performing any official inspection or weighing function to inspect or describe grain according to any state standards of kind, class, quality, condition, or other characteristic of grain as a condition of sale or shipment of that grain in interstate or foreign commerce; (2) require any license for any official inspection or weighing function by official inspection personnel; or (3) impose *any other restrictions* upon the performance of any official inspection or weighing function under this chapter by official inspection personnel.' " (Emphasis in original.)

¶ 39 The plaintiffs also argue that, under the doctrine of *noscitur a sociis*,[10] the preemption clause's reference to "license" could only refer to a license for official inspection or weighing, as there is no such thing as an "unofficial license." The plaintiffs argue that this suggests that when the legislature referred to an "inspection" in the first clause of the sentence, it likewise meant an inspection pursuant to an "official inspection or weighing function."

¶ 40 The defendants, however, argue that the plaintiffs' interpretation would violate the statutory rule that statutes should be read as a whole and construed so that no part is rendered meaningless or superfluous. The defendants state that the plaintiffs' proposed construction entirely nullifies the phrase "as a condition of shipment, or sale, of such grain

---

[10]The doctrine of *noscitur a sociis* (a word is known by its companions) provides that the meaning of an ambiguous term can be ascertained by relating it to words or phrases associated with the term in the statutory context. See *O'Connell v. County of Cook*, 2021 IL App (1st) 201031, ¶ 28; see also *Puritan Finance Corp. v. Bechstein Construction Corp.*, 2012 IL App (1st) 112261, ¶ 13.

in interstate or foreign commerce," which, the defendants argue, is the qualifier for the first category of prohibited State laws.

¶ 41    Although not specifically stated as the rule of the last antecedent[11] canon of statutory construction, the defendants also state that the statute contains the use of the verb "require" twice. The first use prohibits States from "requir[ing] certain inspections or descriptions "as a condition of shipment, or sale, of such grain in interstate or foreign commerce." The second use prohibits States from "requir[ing] any license for" or imposing "any other restrictions upon" the performance of any official inspection or weighing function under this chapter by official inspection personnel." As such, the defendants argue that the phrase "by official inspection personnel" applies to the nearest reasonable referent, that is, "the performance of any official inspection or weighing function under this chapter." Therefore, the defendants argue that the most natural and proper reading of the preemption provision is as follows:

"[T]hat no State or subdivision [thereof] may:

- require the inspection or description in accordance with any standards of kind, class, quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce, **or**

---

[11]The "rule of the last antecedent" canon of statutory construction provides that a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows. *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003); see also *Lockhart v. United States*, 577 U.S. 347, 351 (2016).

- require any license for, or impose any other restrictions upon the performance of any official inspection or weighing function under this chapter by official inspection personnel." (Emphasis in original.) 7 U.S.C. § 87g(a).

¶ 42   To begin our analysis, we first note that two federal district courts have thoroughly analyzed the GSA's preemption provision and found that the provision preempted the plaintiffs' negligence claims. The United States District Court, District of Kansas, held that, under the plain language of section 87g(a) and supported by a reading of the entire GSA, the plaintiffs' negligence claims were preempted because it would impose a duty prohibited under that portion of the provision that "[n]o State *** may require the inspection or description in accordance with any standards of *** quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce." *In re Syngenta Litigation*, 2016 WL 1312519, at 2 (D. Kan. Apr. 4, 2016).

¶ 43   The United States District Court, Southern District of Illinois, also analyzed the preemption provision and reached the same conclusion, finding as follows:

"Looking to the GSA's preemption provision, it states that '[n]o State … may require the inspection or description in accordance with any standards of … quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce.' See 7 U.S.C. § 87g(a). Under the ordinary meaning of the statute text, the presence of a genetic trait, like MIR 162, qualifies as a characteristic

19

of corn. The GSA preempts plaintiff's negligence claims as they relate to inspection and description requirements, sourcing and segregating requirements, and shipping requirements of the Viptera and dried grains with solubles ('DDSG'). The Court therefore concludes that allowing liability for the alleged breach of these duties by the ABCDG's defendants would, in fact, impose a duty on the part of the defendants that falls squarely within the scope of Section 87g(a)." *In re Syngenta Mass Tort Actions*, 2017 WL 54345, at 3 (S.D. Ill. Jan. 4, 2017).

¶ 44 Both lower federal courts conducted an in-depth analysis of the GSA's preemptive provision and began their analyses with the assumption that the ordinary meaning of the language in the provision accurately expressed the legislative purpose. Thereafter, these courts determined that the plaintiffs' negligence claims were prohibited under the first section of the preemption provision. The findings of the two federal district courts support the defendants' arguments regarding the reading of the preemption provision as having two categories of prohibited State laws.

¶ 45 Our review of the preemption provision also results in a finding that the legislature intended two categories of prohibited State laws under the rule of the last antecedent canon of statutory construction. We find that the phrase "by official inspection personnel" applies to the nearest reasonable idiom of "the performance of any official inspection or weighing function under this chapter," since the plaintiffs' alleged modifier of "official inspection" and "official inspection personnel" does not follow either a cohesive preceding clause or a list of verbs sharing a common direct object. As such, we do not believe that the series-

20

qualifier canon of construction would be appropriately applied to this provision as the plaintiffs argue. We also note that the rule of the last antecedent "is particularly true where it takes more than a little mental energy to process the individual entries in the list, making it a heavy lift to carry the modifier across them all." *Lockhart v. United States*, 577 U.S. 347, 351 (2016). The plaintiffs' argument that the modifier of "official inspection" and "official inspection personnel" limits the scope of the entire provision would require that the modifier be read into each of the prohibited State actions, which would require "more than a little mental energy to process the individual entries in the list." *Id*.

¶ 46    Therefore, we do not find that the GSA applies only to state-imposed restrictions upon the performance of any "official inspection" or weighing function by "official inspection personnel." As such, we find that the plaintiffs' negligence claims fall within the first section of the preemption provision that provides that "[n]o State or subdivision thereof may require the inspection or description in accordance with any standards of kind, class, quality, condition, or other characteristics of grain as a condition of shipment, or sale, of such grain in interstate or foreign commerce," and are preempted by the GSA.

¶ 47              C. Remaining Arguments and Issues on Appeal

¶ 48    This court has spent an excessive amount of time conducting a *de novo* review of the findings of the circuit court, and the findings of the various federal courts relied upon and adopted by the circuit court. We have also conducted a thorough review of the statutory law and precedent relied upon by these courts. We have reviewed and considered the plaintiffs' remaining issues and arguments, and the statutory law and precedent set forth in support of those issues and arguments, contained in their briefs. We have also reviewed

21

and considered both of the defendants' briefs filed in this matter, along with the statutory law and precedent cited in support of their arguments regarding the plaintiffs' remaining issues and arguments.

¶ 49    Based upon our review and analysis of the above, we find no error in the circuit court's analysis of the plaintiffs' remaining issues and arguments, nor do we find any error within the federal courts' analysis adopted by the circuit court within its judgment. As such, we find no useful purpose in repeating, once again, what has properly been stated by two federal courts and the circuit court.

¶ 50    Therefore, we find that the circuit court's analysis, opinions or findings of fact, and conclusions of law stated in the judgment appealed, including the analysis, opinions or findings of fact, and conclusions of law of the federal courts relied upon by the circuit court, adequately explain the plaintiffs' remaining issues and arguments on appeal. For that reason, we adopt the analysis and conclusions of law of the circuit court, including the analysis and conclusions of law of the federal courts relied upon and adopted by the circuit court. Thus, we affirm the circuit court's judgment with regard to the plaintiffs' remaining issues and arguments thereunder.

¶ 51    Illinois Supreme Court Rule 23(c) provides that this court may issue a summary order where the opinion or findings of fact and conclusions of law of the circuit court adequately explain the decision, or where no error of law appears on the record. Ill. S. Ct. R. 23(c)(5), (6) (eff. Feb. 1, 2023). We elected not to issue a summary order, nor to address forfeiture, in order to address the plaintiffs' textual issue that had not been addressed in a decision by a previous court. We did so, as stated above, in an attempt to achieve finality

22

of this litigation. The core litigation in this matter has now been addressed by several federal courts, the circuit court, and this court on appeal. Each court has held that the GSA preempts the plaintiffs' negligence claims, regardless of the negligence theories under which the claims have been alleged, and that any further amendment to the plaintiffs' consolidated master complaint would be futile.

¶ 52                           III. CONCLUSION

¶ 53    For the foregoing reasons, we affirm the judgment of the circuit court of Williamson County.

¶ 54    Affirmed.